Arnold T. FORSETH, et. al., Plaintiffs,

v.

VILLAGE OF SUSSEX,
et. al., Defendants.

No. 97–C–215.

United States District Court,
E.D. Wisconsin.

Sept. 25, 1998.

Dennis L. Fisher, Meissner, Tierney, Fisher & Nichols, Milwaukee, WI, for plaintiffs.

Mark A. McClendon, Raymond J. Pollen, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for defendants.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on plaintiffs' objection to the Recommendation

of Magistrate Judge William E. Callahan granting defendants' motion to dismiss. For the following reasons, the Court overrules the objection and adopts the Magistrate's Recommendation.

# I

The Recommendation (attached as an appendix hereto) sets forth the facts alleged in plaintiffs' complaint, all of which must be accepted as true for purposes of this motion. The Court will not restate those here. Plaintiffs object, however, to the Magistrate's summary and dismissal of the federal causes of action which arise from those facts. To clarify matters, plaintiffs set forth in their objection four federal causes of action they claim to assert:

(1) A substantive due process claim stemming from the Village of Sussex' ("the Village") act of conditioning the approval of a rezoning request and a conditional use permit on plaintiffs' agreement to convey a parcel of land to John Tews ("Tews"), insofar as the conveyance bore no substantial relation to the underlying requests;

(2) A 5th and 14th Amendment takings claim, based upon the doctrine of unconstitutional conditions, stemming from the same required conveyance;

(3) A 5th and 14th Amendment takings claim, stemming from an alleged temporary taking of a portion of plaintiffs' property via the periodic physical invasion of plaintiffs' land by storm water runoff from surrounding subdivisions; and

(4) An equal protection claim stemming from alleged "unusual and discriminatory" delay[s], reviews, inspections, etc. within the plat approval process for plaintiffs' proposed subdivision.

(Objection at 2–3.)

# II

The Court essentially agrees with the Magistrate's analysis. In such situations the Court is reluctant to write separately. Here, however, while adopting the reasoning and authorities contained in the Magistrate's analysis, the Court supplements that reasoning with the following points in an effort to clarify, emphasize and/or assert additional grounds for dismissal. These points track the federal causes of action asserted above.

## A. Substantive Due Process

■ Plaintiffs' substantive due process claim fails because the 7th Circuit does not recognize a separate cause of action in substantive due process for the denial of property rights through local land use regulation:

"Substantive due process" has the distinct disadvantage, from plaintiffs' perspective, of having been abolished in the late 1930s when the Supreme Court threw over *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). Economic substantive due process is not just embattled; it has been vanquished. The name lives on, but it is attached to a new doctrine, one that insulates fundamental rights from governmental intrusion. Some things a government cannot do at all, no matter the justification. The Gosnells do not contend that Troy interfered with their fundamental rights, a sound concession. A municipality may bring residential development to a halt for strong reasons or weak reasons. If the latter, the municipality has to pay for the privilege. [Citations omitted.] But act it may. Businesses must make their arguments under the takings clause and the rational-basis component of equal protection analysis, something the Gosnells have not tried to do.

*Gosnell v. City of Troy, Illinois*, 59 F.3d 654, 657 (7th Cir.1995).

The Seventh Circuit has refused to recognize the existence of substantive due process protection for property interests; such claims are cognizable only when coupled with another substantive right, such as a takings claim: "[A] substantive due process claim based on a state-created property interest is cognizable where a plaintiff claims either a violation of some other substantive constitutional right or that the state law remedies are inadequate...." [Citation omitted.]

In a pair of opinions, Chief Judge Richard Posner and Judge Frank Easterbrook

have effectively incorporated substantive due process protection of nonfundamental property rights into the Takings Clause.... In the Seventh Circuit, plaintiffs with economic or property claims must "make their arguments under the takings clause and the rational-basis component of equal protection analysis." [Quoting *Gosnell, supra.*] In somewhat less expansive language, Chief Judge Posner has written that the Takings Clause is the principal constitutional source of protection of property rights....

Krotoszynski, *Fundamental Property Rights,* 85 Geo.L.J. 555, 580–82 (1997).

 This is not to say there is no case law in the 7th Circuit supporting the notion of a substantive due process claim based on property rights. As noted above, there are cases in the 7th Circuit which state that substantive due process claims based on property rights are cognizable where a plaintiff alleges a violation of some other substantive constitutional right.[1] *See, Doherty v. City of Chicago,* 75 F.3d 318, 325 (7th Cir.1996); *Polenz v. Parrott,* 883 F.2d 551, 558 (7th Cir.1989). Here, plaintiffs claim the Village forced them to convey land to Tews for his own private use as a condition for favorable treatment of plaintiffs' requests for rezoning and a conditional use permit. The 5th Amendment, applied to the states through the 14th Amendment, is read typically to prohibit state governments from taking private property for private—as opposed to public—purposes, even though compensation be paid. *See, Armendariz v. Penman,* 75 F.3d 1311, 1320–21 (9th Cir.1996); *but see also, Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 464–65 (7th Cir.1988) (explaining that notion of Takings Clause as containing negative implication prohibiting takings for private purposes is a reasonable, though not necessary, interpretation of the constitutional language). Thus, plaintiffs seem to satisfy the requirement of pleading the violation of some other substantive constitutional right. The 7th Circuit has come close to holding that such a claim can go forward under the rubric of substantive due process:

> [The substantive due process] approach has its greatest appeal when the state acts outside its eminent domain powers, for example by taking property for a private rather than for a public use. Suppose a state passed a law which said that the governor could take away a person's home and give it to his brother-in-law. It could be argued that such a law, even if meticulously enforced in accordance with the requirements of due process in the sense of fair procedure, would, if the law were as arbitrary and unreasonable as it seemed, deprive the homeowner of property without due process of law. Statutes or other exertions of governmental power that lack a rational basis, in the sense of some connection however tenuous to some at least minimally plausible conception of the public interest, are held to violate due process even if there is no procedural irregularity; so if they deprive someone of life, liberty, or property, they give rise to a claim under the due process clause. When land is taken for a private rather than public use, a rational basis for the government's action, it may be argued, is lacking. The fact that the landowner has an alternative right, one to just compensation, need not be decisive, when it is understood that the purpose of the just-compensation requirement is, ... to enable government to acquire property cheap—for bare market value, extinguishing all additional value, sentimental or otherwise, that the landowner might attach to the property—on condition, however, that it is being acquired for a public and not a private use.

*Gamble v. Eau Claire County,* 5 F.3d 285, 286–87 (7th Cir.1993).

---

1. Indeed, based on these cases, it may be more accurate to say that the 7th Circuit is internally divided over the issue, with Chief Judge Posner and Judge Easterbrook leading the contingent hostile to substantive due process claims based on state-created property interests. Professor Krotoszynski, however, seems to think recent panels are "follow[ing] their lead." Krotoszynski, 85 Geo.L.J. at 582 (citing, *Covington Court Limited v. Village of Oak Brook,* 77 F.3d 177 (7th Cir.1996) (Bauer, J., Rovner, J. and Evans, J., presiding)). Ultimately, as explained in footnote 3 *infra,* a substantive due process claim, even if viable, would not be ripe for adjudication.

However, recognizing a substantive due process claim in situations where the plaintiff alleges the violation of another substantive constitutional right—specifically, the Takings Clause of the 5th Amendment—creates a distinct analytical problem: Which constitutional provision provides the cause of action? Is it the due process clause of the 14th Amendment, which is to say the so-called substantive due process prong of that clause? Or is it the 5th Amendment Takings Clause itself, made applicable to the states through the 14th Amendment. In *Armendariz,* cited *supra,* the 9th Circuit persuasively argued that such claims must proceed under the Takings Clause, not the substantive due process prong of the 14th Amendment, because it is well-established that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Armendariz,* 75 F.3d at 1319 (quoting, *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994), in turn quoting, *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). *Armendariz* also noted *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), where the U.S. Supreme Court "strongly suggests" that the Takings Clause is the sole or primary guide for reviewing a "private taking" claim. *Armendariz,* 75 F.3d at 1321–24.

The Court believes the 7th Circuit would follow the lead of the 9th Circuit on this issue. The 7th Circuit is generally hostile to the notion that property rights can be protected under the rubric of substantive due process. Consequently, Professor Krotoszynski concludes that the 7th Circuit has already "effectively incorporated substantive due process protection of nonfundamental property rights into the Takings Clause...." *See,* Krotoszynski, *supra.* Indeed, even in *Gamble,* where the 7th Circuit stated that claims of "private takings" may sound in substantive due process, the Circuit Court was careful to note "there is some authority, ... that the takings clause of its own force would forbid a taking for a private use, leav-ing no room for a claim of denial of substantive due process." *Gamble,* 5 F.3d at 287 (citing, *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir.1981) and *A.A. Profiles, Inc. v. City of Ft. Lauderdale,* 850 F.2d 1483, 1488 (11th Cir.1988)). Based on the foregoing, plaintiffs cannot assert a substantive due process claim under the 14th Amendment for the alleged taking of their property for private use. Rather, plaintiffs must pursue such a claim under the Takings Clause of the 5th Amendment, made applicable to the states by the 14th Amendment.

### B. Unconstitutional Conditions

■ Which they have done. Alternative to their substantive due process theory, plaintiffs argue an "unconstitutional conditions" claim. "Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan,* 512 U.S. at 385, 114 S.Ct. at 2317. Plaintiffs argue that the Village violated this doctrine by requiring plaintiffs to convey a parcel of property to Tews—for his own use and at less than fair market value—in exchange for favorable zoning regulations that had little to do with the property in question.

First, it is important to note that the "unconstitutional conditions" doctrine is just that—a doctrine, not a formal cause of action. It is an analytical tool courts use to prevent the government from doing indirectly what it cannot do directly. For example, the Village cannot take plaintiffs' property and give it to Tews for his own private use. That would violate the Takings Clause of the 5th Amendment. The unconstitutional conditions doctrine simply says that the Village cannot end run this ban by requiring plaintiffs to "voluntarily" convey their property to Tews in exchange for some discretionary governmental benefit having little to do with the required conveyance. That also violates the Takings Clause of the 5th Amendment. In other words, the underlying cause of action is sup-

plied by the constitutional provision containing the right which the plaintiff claims to have been forced to relinquish. Thus, plaintiffs' "unconstitutional conditions" claim is essentially a takings claim under the 5th and 14th Amendments.

▆▆▆ Second, a takings suit under the 5th Amendment based on the application of government land use regulations is not considered "ripe" until two things occur: First, the government entity charged with implementing the regulations must reach a "final" decision regarding the property at issue, which is to say it must "arrive[ ] at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 192, 105 S.Ct. 3108, 3116, 3119–20, 87 L.Ed.2d 126 (1985). Second, the property owner must first utilize whatever state procedures exist for obtaining just compensation and be denied the same. *Id.,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21. Under the 7th Circuit's interpretation of *Williamson,* both prerequisites apply to plaintiffs' 5th Amendment claim, and neither have been satisfied.

### 1. Finality

In *Williamson,* the developer submitted a subdivision plat for approval by the county planning commission. The commission rejected the plat, listing several problems and objections. The developer appealed to the county board of appeals, with some success, but the commission rejected the jurisdiction of the board and denied the plat a second time. The developer filed a takings claim in federal court, which went all the way to the Supreme Court, where it was rejected on ripeness grounds. The Supreme Court held that there was no "final" decision with respect to the proposed plat because, although the commission rejected the plat, the developer could have sought a variance from the requirements that supplied the basis for the commission's objections. *Id.,* 473 U.S. at 187–94, 105 S.Ct. at 3117–20. A variance was not an appeal of the commission's decision, but rather a separate basis for approval, and thus another step in the initial decision-making process. This aspect of *Williamson*

leads some courts, including the 7th Circuit, to summarize the finality requirement as requiring "(1) a rejected development plan, and (2) a denial of a variance." *Unity Ventures v. County of Lake,* 841 F.2d 770, 774 (7th Cir.1988) (quoting, *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir.1987)).

Here, plaintiffs' requests for rezoning of the property and for a conditional use permit were approved, but subject to an offensive condition, *i.e.,* the conveyance of land to Tews for his private use. The Court considers a conditional approval of this sort the equivalent of a rejected development plan. However, plaintiffs failed to seek a variance from the offensive condition. Under Wisconsin law, it appears either the Village Planning Commission or the Village Board of Appeals could have granted a variance upon request. *See,* Wis.Stats. §§ 61.35, 62.23(7)(e); *see also,* Village of Sussex Zoning Ordinance, §§ 17.1201, 17.1204. Plaintiffs did not avail themselves of that procedure, and thus their takings claim is not ripe for adjudication.

But perhaps the Court misreads the availability of variance procedures in this case (entirely possible, given that neither party reviews or explains the relevant zoning ordinances and procedures). Even so, the 7th Circuit's expansive reading of *Williamson* precludes plaintiffs' 5th Amendment claim. Essentially, the 7th Circuit interprets *Williamson*'s finality requirement as an exhaustion requirement. That is, recent decisions from the 7th Circuit not only require a final decision (presumably adverse) from the pertinent governmental entity, but also require the plaintiff to exhaust whatever administrative review procedures and/or state court remedies are available to overturn that decision. *See e.g., Gamble,* 5 F.3d at 286 (no final decision where plaintiff could have sought judicial review of negative decision by county board of land use appeals); *Covington,* 77 F.3d at 179 (to succeed on a takings claim plaintiff must first show that it has availed itself of state court remedies). That position is stated most starkly by Judge Easterbrook in *River Park, Inc. v. City of Highland Park:*

.

.

Federal courts are not boards of zoning appeals. This message, oft-repeated, has not penetrated the consciousness of property owners who believe that federal judges are more hospitable to their claims than are state judges. Why they should believe this we haven't a clue; none has ever prevailed in this circuit, but state courts often afford relief on facts that do not support a federal claim. Is it that they have omitted the steps necessary to obtain review in state court and hope for the best in a second-chance forum? Well, we are not cooperating. Litigants who neglect or disdain their state remedies are out of court, period.

*Id.*, 23 F.3d 164, 165 (7th Cir.1994).

From the Court's perspective, and from the plaintiffs' as well, this interpretation of *Williamson* goes too far.[2] Nonetheless, it is a binding interpretation in the 7th Circuit. In this case, plaintiffs failed to file an appeal of the Planning Commission's decision to the Board of Appeals, as was their right under § 17.1204(A) of the Village's Zoning Ordinance. Had they done so and lost, they also could have sought judicial review of that decision by a local state court under § 17.1211 of the same ordinance. Having neglected their state administrative and judicial remedies, plaintiffs' 5th Amendment claim is not ripe for adjudication.[3]

### 2. Just Compensation

Even if plaintiffs somehow satisfy *Williamson*'s finality requirement, they do not satisfy *Williamson*'s second requirement, *i.e.*, prior resort to state law procedures for just compensation. Of course, as stated by the 9th Circuit in *Armendariz*, logic suggests that this requirement does not apply in cases where, as here, it is alleged that a municipality took private property for private—as opposed to public—purposes. That is, takings for private purposes are unconstitutional *per*

---

**2.** As the Court reads *Williamson*, it requires only a final decision by the initial decisionmaking authority and rules out the need to exhaust any state appellate or review procedures, be they administrative or judicial. *Williamson* is quite clear on this:

Respondent asserts that it should not be required to seek variances from the regulations because its suit is predicated upon 42 U.S.C. § 1983, and there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. [Citation omitted.] While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.

The difference is best illustrated by comparing the procedure for seeking a variance with the procedures that, under *Patsy*, respondent would not be required to exhaust. While it appears that the State provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by county authorities, respondent would not be required to resort to those procedures before bringing its § 1983 action, because those procedures clearly are remedial. Similarly, respondent would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decisionmaking.

*Williamson*, 473 U.S. at 192–93, 105 S.Ct. at 3119–20.

**3.** This analysis also provides a second basis for dismissing plaintiffs' substantive due process claim, discussed *supra*. That is, the 7th Circuit holds that property owners cannot avoid the exhaustion requirements of *Williamson* by labeling their claim as one of "substantive due process," instead of a takings claim under the 5th Amendment. *See, Gamble*, 5 F.3d at 287 ("*Williamson* holds that even if a taking claim can be challenged as a denial of substantive due process, a suit based on this theory is premature if the plaintiff has possible state remedies against the zoning regulation or other state action that he wants to attack."); *see also, River Park*, 23 F.3d at 167 ("... a property owner may not avoid *Williamson* by applying the label 'substantive due process'.... Labels do not matter. A person contending that state or local regulation of the use of the land has gone overboard must repair to state court."). Thus, plaintiffs' failure to exhaust their state remedies renders their substantive due process claim, to the extent such a claim is even viable, unripe for adjudication.

*se,* regardless of compensation, and thus there is no basis for requiring a property owner to first seek "just compensation" in a state court proceeding. Rather, the property owner is entitled to return of his property, plus whatever compensatory damages may be appropriate. *See e.g., Armendariz,* 75 F.3d at 1320, fn. 5. But here again, the 7th Circuit reads *Williamson* broadly. In such situations, and in lieu of state law "just compensation" procedures, the 7th Circuit requires property owners to pursue a state court action for return of their property before seeking relief in federal court:

> *Regardless of the purpose of the taking,* however, due process challenges are premature if the plaintiff has not exhausted possible state remedies by which to attack the zoning regulation or other state action. [Citing *Williamson.*]
>
> \* \* \* \* \* \*

Covington argues that the requirement that a plaintiff exhaust its state court remedies might not apply when a state takes property for a purely private rather than a public use. [Citations omitted.] To this end, Covington claims that Oak Brook's violations of its substantive due process rights entitle it not merely to "just compensation", but to full common law damages. However, this court has held

> that a property owner may not avoid *Williamson* by applying the label "substantive due process" to the claim. So too with the label "procedural due process." Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court.

*Covington,* 77 F.3d at 179 (quoting, *River Park,* 23 F.3d at 167) (emphasis supplied). Plaintiffs failed to seek such relief in state

court, and thus their 5th Amendment claim is not ripe for adjudication.[4]

## C. Storm Water Runoff

■ Plaintiffs assert a claim for a "temporary taking," stemming from the periodic physical invasion of their land by storm water runoff from surrounding subdivisions. Plaintiffs claim the Village designed and/or constructed the relevant drainage system such that it dumps substantial amounts of storm water onto their property. Said flooding, plaintiffs argue, constitutes a taking. Moreover, plaintiffs argue—correctly—that "[a] physical taking, . . . is by definition a final decision, and thereby satisfies *Williamson's* . . . first exhaustion requirement." *See, Sinaloa Lake Owners Assoc'n v. City of Simi Valley,* 882 F.2d 1398, 1402 (9th Cir. 1989), overruled on other grounds, *Armendariz, supra.* Thus, this claim, unlike plaintiffs' other claims, is not subject to a "finality" challenge.

However, plaintiffs must still comply with *Williamson's* second exhaustion requirement. "Even in physical taking cases, compensation must first be sought from the state if adequate procedures are available." *Id.* Here, plaintiffs have not sought compensation from the Village through any state procedure. Instead, they claim such procedures are not available insofar as they allege a "temporary taking"; "temporary takings," plaintiffs argue, are not cognizable under Wisconsin's inverse condemnation statute. Maybe so, but said fact does not render *Williamson* inapplicable.

First, the Court notes that plaintiffs did not characterize this particular claim as a "temporary" taking in their complaint. Indeed, quite the opposite. Plaintiffs seem to

---

4. Plaintiffs might argue that the time for initiating an action in state court has passed, meaning there are no state law remedies available, or that those which are available are time-barred and futile. The 7th Circuit, however, is not sympathetic to this argument:

> By booting her state compensation remedies she forfeited any claim based on the takings clause to just compensation. We cannot, it is true, find any case which says that failure to pursue state compensation remedies in timely fashion forfeits a federal claim to just compen-

sation. The cases hold that the federal claim is unripe until state remedies are exhausted. But a claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open. As recognized in other areas where exhaustion of remedies is required, an unexcused failure to exhaust forfeits the plaintiff's rights, with various exceptions not applicable here.

*Gamble,* 5 F.3d at 286.

describe the taking as a continuous event inflicting permanent damage. The exact language of the complaint is as follows:

> Messrs. Tews and Swartz and other Village officials and agents also *continuously failed* to adequately control the flow of water in the storm sewers from adjacent suburbs under Waukesha Avenue through an uncovered ditch across Plaintiffs' subdivision, *causing extensive erosion, flooding and changes in the hydrology, soils and vegetation on lands contained within the subdivision, to the expense and damage of Plaintiffs.*

(Complaint at ¶ 30; emphasis added.) It seems plaintiffs' first reference to the storm water runoff as a temporary taking was in their brief in opposition to dismissal. The precise allegations of the complaint control, not the legal arguments of counsel, and plaintiffs' complaint alleges something which sounds an awful lot like a permanent taking. If permanent, of course, Wisconsin's inverse condemnation statute provides a remedy, one the plaintiffs must pursue before bringing an action in federal court.

But let's read plaintiffs' complaint as alleging a temporary taking. Plaintiffs cite Wisconsin case law for the proposition that Wisconsin's condemnation statute "does not govern inverse condemnation proceedings seeking just compensation for a temporary taking of land for public use." *Andersen v. Village of Little Chute*, 201 Wis.2d 467, 475, 549 N.W.2d 737, 740 (Ct.App.1996). Plaintiffs then posit the proposition that *Williamson* only requires "that the plaintiffs resort to state *statutory* means, *if available*, for seeking just compensation (*i.e.*, Wisconsin's Inverse Condemnation statute, codified at Section 32.10 of the Wisconsin Statutes)." (Objection at 17; emphasis added.) Because *Andersen* holds that Wisconsin's statutory remedy of inverse condemnation is not available for temporary takings, plaintiffs conclude they are excused from complying with *Williamson.*

While the foregoing argument may be a reasonable interpretation of *Williamson*, the 7th Circuit seems to disagree. As explained in the previous section, the 7th Circuit interprets *Williamson* broadly to preclude the assertion of any type of takings claim in federal court so long as there is *any* state court remedy available. It does not matter whether the remedy is based on the state's inverse condemnation statute. (See extended quotation from *Covington, supra.*) Here, while plaintiffs might not have been able to proceed under Wisconsin's inverse condemnation statute, they could have filed a claim in state court under Article I, Section 13 of the Wisconsin Constitution, which states that "[t]he property of no person shall be taken for public use without just compensation." Indeed, in *Andersen*, the plaintiff asserted such a claim and prevailed before a state jury, and the Wisconsin Court of Appeals upheld the jury's award "as just compensation for the Village's temporary taking, ...." *Id.*, 201 Wis.2d at 472, 549 N.W.2d at 739. Plaintiffs' arguments notwithstanding, *Andersen* stands for the proposition that plaintiffs had an available and adequate state court remedy for their "temporary takings" claim, and under *Covington*, pursuit of that remedy was a prerequisite to suit in federal court. Accordingly, plaintiffs' "temporary takings" claim is not ripe for adjudication.

### D. Equal Protection

■ Finally, plaintiffs claim that defendants, both before and after plaintiffs' subdivision plat was formally approved, engaged in a malicious conspiracy of delay and obstruction in a vindictive effort to harass the plaintiffs and discriminate against them, all to the plaintiffs' expense and damage. Plaintiffs claim that other subdivisions similarly situated were not subjected to such treatment, and thus defendants' actions violated the plaintiffs' 14th Amendment rights to equal protection. Although rarely successful, such claims—asserting official malice and discrimination towards a class of one—are viable. *See, Esmail v. Macrane*, 53 F.3d 176, 179 ("The distinctive feature here, which the district judge did not discuss, is that the unequal treatment is alleged to have been the result solely of a vindictive campaign by the mayor.... If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward

him, the individual ought to have a remedy in federal court."). However, when, as here, such claims are asserted to challenge a municipality's land use regulations, they are subject to the ripeness requirements of *Williamson,* just like plaintiffs' 5th Amendment and substantive due process claims. *See, Unity Ventures,* 841 F.2d at 775 ("Although the plaintiffs' suit is not premised on a takings claim, as were the *Yolo County, Williamson,* and *Kinzli* cases, we agree with the Ninth Circuit in *Herrington* that the ripeness analysis used in those cases applies as well to equal protection and due process claims.") (citing, *Herrington v. County of Sonoma,* 834 F.2d 1488, 1494 (9th Cir.1987)). Accordingly, the equal protection claim is not ripe for adjudication.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' objection to the Magistrate's Recommendation is overruled; and

2. Defendants' motion to dismiss is granted and the case dismissed.

**SO ORDERED.**

### MAGISTRATE JUDGE'S RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS

CALLAHAN, United States Magistrate Judge.

#### Background

On March 5, 1997, the plaintiffs, Arnold T. Forseth, Randy S. Forseth, and A & R Land Company (hereinafter collectively referred to as "Forseth"), filed a complaint against the defendants, Village of Sussex, John H. Tews ("Tews"), and M. Chris Swartz ("Swartz"). The complaint alleges five separate claims (or causes of action). The first four claims name all three defendants; the fifth claim is only against Tews in his individual (as opposed to official) capacity.

The factual scenario out of which the complaint arises is set forth in more particular fashion below. Suffice it to say, however, the first claim, seeking relief under 42 U.S.C. § 1983, is the flagship claim upon which jurisdiction in this court rests. The remaining four claims are all state law causes of action.

Specifically, in the first claim, the plaintiffs allege that the defendants "violated [p]laintiffs' rights and privileges under the Fifth and Fourteenth Amendments to the United States Constitution by creating a taking of [p]laintiffs' property without just compensation and denying [p]laintiffs procedural and substantive due process and equal protection of the law." (Plaintiffs' Complaint, ¶ 34).

The defendants filed an answer to the plaintiffs' complaint in a timely fashion. Subsequently, they filed a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., arguing that the plaintiffs' complaint failed to state a claim upon which relief could be granted.[1] After the defendants' motion was briefed by the parties in accordance with the briefing schedule called for by this Local Rule 6.01 (E.D.Wis.), the parties continued to submit letters to the court. Most recently, the defendants submitted a letter dated April 22, 1998, attaching thereto copies of the recently decided cases of *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), and *Biblia Abierta v. Banks,* 129 F.3d 899 (7th Cir.1997). The net result of the foregoing is that the defendants' motion has now been fully briefed and is ready for resolution.

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367. Venue is proper in the Eastern District of Wisconsin. Because not all parties have consented to magistrate judge jurisdiction, this court's jurisdiction is limited. See, 28 U.S.C. § 636(b). For the reasons

---

**1.** Rule 12(b) provides that:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Both sides of this controversy have presented matters outside the pleadings in support of their positions. However, this court will not consider those materials. Thus, this motion will be viewed as one to dismiss the complaint for failure to state a claim upon which relief can be granted.

which follow, I recommend that the defendants' motion to dismiss be granted.

**Test to be Applied on Motion to Dismiss**

The defendants' motion is more properly one for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., than a motion to dismiss under Rule 12(b)(6). This is because the defendants' motion to dismiss was filed subsequent to the filing of their answer. See, *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991), (Noting that Rule 12(b) motions to dismiss must be made before responsive pleadings are filed; once a responsive pleading is filed, Rule 12(b) motions to dismiss are deemed to be ruled 12(c) motions for judgment on the pleadings).

■ Nevertheless, a motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. See, *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996); *GATX Leasing Corp. v. National Union Fire Insurance Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). Thus, the motion admits all well-pleaded factual allegations in the opponent's pleading, but an opponent's legal conclusions are not deemed admitted. *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 178, n. 2 (7th Cir.1986). (Noting that reasonable inferences are drawn in favor of the nonmoving party, but that the legal characterizations the pleader draws from the pleaded facts do not bind the court). The court accepts all well-pleaded material allegations of the nonmoving party as true, and views all facts and inferences in a light most favorable to the pleader. See,*Frey*, 91 F.3d at 46; *Pennsylvania Nurses Association v. Pennsylvania State Education Association*, 90 F.3d 797, 799–800 (3d Cir.1996). A Rule 12(c) judgment will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See, *Burns International Security Services, Inc. v. International Union, United Plant Guard Workers of America*, 47 F.3d 14, 16 (2d Cir.1995); *New Zealand Lamb Company, Inc. v. United States*, 40 F.3d 377, 380 (Fed.Cir.1994). If, however, a material issue of fact remains in dispute, the court must deny the Rule 12(c) motion. See, *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir.1994). (Judgment will not be granted unless movant clearly establishes that no material factual issues remain and that judgment is appropriate as a matter of law).

With those standards in mind, I now turn to the allegations of the plaintiffs' complaint.

**The Complaint**

Because the allegations in the plaintiffs' complaint must be taken as true, at least at this stage of the proceedings, liberal reference to those allegations is appropriate.

According to the plaintiffs, on or about July 24, 1992, Arnold T. Forseth and Randy S. Forseth, d/b/a A & R Land Company, purchased approximately 30 acres of land in the Village of Sussex, Washington County, from Ervin Krueger, Dorothy Tews and Harold Krueger. On July 24, 1992, and thereafter to the present, A & R Land Company has operated as a general partnership under an oral agreement between Arnold T. Forseth and Randy S. Forseth as the sole general partners. Arnold T. Forseth, Randy S. Forseth and A & R Land Company are the plaintiffs in this action. (Plaintiffs' Complaint, ¶¶ 9 and 10).

The plaintiffs purchased the aforedescribed approximately 30 acres of land ("the property") with the intention of developing a residential subdivision and selling lots therein to the public. At the time of the purchase, the property was zoned RS–1, single family residential. The property is bounded on the west by Waukesha Avenue and on the north by Good Hope Road, except that the northwest corner of the property is bounded by lands owned by others, including a parcel owned by defendant Tews as his homestead. (Plaintiffs' Complaint, ¶ 11).

In or about August 1992, the plaintiffs submitted a Preliminary Plat of a subdivision on the property called "Meadow Canyon Estates" to the Village of Sussex ("Village") for approval pursuant to Chapter 236, Wis.Stats., and Chapter 18 of the Village Ordinances. (Plaintiffs' Complaint, ¶ 12).

On or about August 20, 1992, the Village Plan Commission ("Plan Commission") denied the Preliminary Plat. The Plan Commission meeting minutes state that the Plat was denied because several lots were designed to

have direct driveway access to Waukesha Avenue, an arterial highway, and the areas designated as wetlands within the subdivision were not governed by any development restrictions in the Plat. (Plaintiffs' Complaint, ¶ 13).

Thus, in or about January 1993, the plaintiffs submitted a second Preliminary Plat of a subdivision on the property, this time named "Canyon Meadow Estates," to the Village for approval pursuant to Chapter 236, Wis.Stats., and Chapter 18 of the Village Ordinances. (Plaintiffs' Complaint, ¶ 14).

This second Preliminary Plat was further amended in accordance with suggestions of the Southeastern Wisconsin Regional Planning Commission ("SEWRPC") staff. As submitted for review by the Village and the "objecting authorities" defined in § 236.12, Wis.Stats., and § 18.0302 of the Village Ordinances, the Plat provided for 23 lots, all of which had driveway access only to the internal street within the subdivision, and further provided for a wetland conservancy area ("wetlands") in which no building could occur in all areas which had been delineated by governmental agencies as wetlands within the subdivision. The new Plat thereby addressed the two concerns expressed in the minutes of the Plan Commission meeting of August 20, 1992, for rejection of the first Plat. (Plaintiffs' Complaint, ¶ 15).

The Canyon Meadow Estates subdivision contained four lots (Numbers 1, 2, 5 and 6) which directly abutted the homestead property of Tews in the northwest corner of the platted subdivision. Tews objected to the proposed plat alleging that Native American campgrounds of archeological or historical significance were located within the subdivision. This allegation was not substantiated by the State Historical Society of Wisconsin, and the Preliminary Plat received the approval of the Plan Commission on or about February 25, 1993, subject to certain conditions. The Village Board gave the same conditional approval to the Preliminary Plat, which also received approval from the state and county agencies, i.e., the objecting authorities. None of the governmental agencies which reviewed the Preliminary Plat, including the Plan Commission and the Vil-

lage Board, raised any objections or concerns regarding the boundaries of the wetlands shown on the Preliminary Plat. (Plaintiffs' Complaint, ¶ 16).

Approximately two months later, i.e., in or around April 1993, Tews was elected President of the Village Board which, upon information and belief, occurred after the Village and all county and state objecting authorities had approved the Preliminary Plat for Canyon Meadow Estates. (Plaintiffs' Complaint, ¶ 17).

From and after his election as Village Board President, in or about April 1993, Tews, with the assistance and knowing involvement of Swartz, in their official capacities as Village Board President and Village Administrator, respectively, engaged in a series of actions to prevent and obstruct the Plat of Canyon Meadow Estates from receiving final approval by the Village Board and to insist upon modifications and concessions by the plaintiffs in a replatting of the subdivision for the personal benefit of Tews, an adjoining landowner, and to the detriment of the plaintiffs. (Plaintiffs' Complaint, ¶ 18).

During the late summer of 1993, the plaintiffs submitted a Final Plat of the Canyon Meadow Estates subdivision to the Village for approval pursuant to Chapter 236, Wis. Stats., and Chapter 18 of the Village Ordinances. While the plaintiffs were attempting to get approval of the Final Plat by the Plan Commission, by the Village Board, and by the county and state objecting authorities, Tews and Swartz began to unilaterally request that SEWRPC and the United States Army Corps of Engineers ("the Corps") do a field study on the property to redefine the boundary line of the wetlands. (Plaintiffs' Complaint, ¶ 19).

SEWRPC refused to perform a new field study to redefine the wetlands' boundary because the field work had been done in 1982, and SEWRPC was not aware of changes in conditions on the property which would have likely altered the wetlands' boundary. (Plaintiffs' Complaint, ¶ 20).

The Final Plat received approval from all county and state objecting authorities, and from the Plan Commission in or about Sep-

tember 1993. The only remaining step for full approval was a vote by the Village Board, of which Tews was then President. (Plaintiffs' Complaint, ¶ 21).

In or about October 1993, Tews and Swartz persuaded the Corps to perform a new field study on the property. Tews and Swartz were aware that the Village had previously approved the design and installation of storm water drainage systems in connection with the approval of other subdivisions west of Waukesha Avenue during the preceding several years. These storm water drainage systems collected, channeled and transported large volumes of water under Waukesha Avenue for discharge on the property sought to be subdivided by the plaintiffs. Tews and Swartz were further aware that this new discharge of large volumes of water would likely have increased the area of wetlands on the property as compared to 1982, and that any increase in the wetlands would interfere with the ability of the plaintiffs to subdivide in accordance with the Plat of Canyon Meadow Estates which had received preliminary approval by all governmental authorities and final approval by all governmental authorities except the Village Board. (Plaintiffs' Complaint, ¶ 22).

Tews and Swartz used the pendency of the new field study by the Corps to delay approval by the Village Board of the Final Plat. The Corps' field study was conducted in or about November 1993, and determined that the wetlands had indeed increased. The Corps, therefore, moved the boundary of the wetlands westward from its prior location by a distance of 100 feet, more or less. This relocation rendered several lots in the Final Plat of Canyon Meadow Estates unbuildable and resulted in the Plat being unworkable and never receiving final approval by the Village Board. (Plaintiffs' Complaint, ¶ 24).

The plaintiffs retained new engineers to prepare a third version of a Plat for a subdivision on the property. This third Plat was again named "Canyon Meadow Estates." The plaintiffs were informed directly, and through their agents, that in order to finally get their subdivision approved by the Village Board, they would be required to convey a buffer strip to Tews on both sides where his homestead bordered the plaintiffs' property. Tews was the Village Board President at the time. (Plaintiffs' Complaint, ¶ 24).

Although the plaintiffs believed this request was an inappropriate exercise of governmental authority, and a conflict of interest for Tews, they were also personally frustrated and financially strained by the delays and expenses incurred in connection with the prior two proposed plats. Thus, the plaintiffs reluctantly agreed to include this change in their new Plat. Because of the demand that approximately two acres be deeded to Tews, and the increased area that was designated as wetlands, the new Plat contained the equivalent of five fewer lots than the prior version of the Canyon Meadow Estates' Plat. (Plaintiffs' Complaint, ¶ 25).

The revised Plat was presented to the Village in a series of Plan Commission meetings and hearings beginning in January 1994. As part of the new subdivision plans it was necessary to rezone a portion of the property from category RS-1 single family residential to category RS-2 single family residential and obtain a conditional use permit. The plaintiffs' application for rezoning and for a conditional use permit were reviewed and approved by the Plan Commission and the Village Board while Tews was acting as Chairman of the Plan Commission and Village Board President. Both the ordinance granting the rezoning and the conditional use permit were granted upon the express condition that the plaintiffs convey a buffer parcel of land to Tews personally. Tews and Swartz, in their official capacities, signed the rezoning ordinance and the conditional use permit, both of which contained the requirement that the plaintiffs convey the buffer strip of land to Tews personally. (Plaintiffs' Complaint, ¶ 26).

As an additional prerequisite to obtaining Village Board approval for the Final Plat of the redesigned Canyon Meadow Estates, the plaintiffs were required by the Village to enter into a Subdivider's Agreement which incorporated by reference all of the obligations set forth in the rezoning ordinance and the conditional use permit. The Subdivider's Agreement was signed by Tews and Swartz on behalf of the Village on or about

June 17, 1994. Further, the plaintiffs and the Village entered into a First Amendment to the Subdivider's Agreement on or about March 8, 1995, which expressly reiterated the requirement of the land conveyance to Tews. The First Amendment to the Subdivider's Agreement was signed on behalf of the Village by Tews and Swartz. (Plaintiffs' Complaint, ¶ 27).

As required by the conditions imposed by the Village for approval of their Plat, the plaintiffs conveyed a parcel of land to Tews on or about February 15, 1995, consisting of approximately 1.85 acres bordering Tews' homestead. The appraised value of this land was in excess of $51,000.00. Tews offered $1,500.00 and ultimately agreed to pay $6,000.00, which the plaintiffs reluctantly accepted in order to obtain approval of their subdivision Plat. (Plaintiffs' Complaint, ¶ 28).

In addition to requiring the conveyance of land, Tews and Swartz subjected the plaintiffs to a continuing array of arbitrary and discriminatory treatment before approving the Final Plat, including but not limited to, frequent changes in the conditions required for Plat approval and unwarranted delays in scheduling Village Board approval and arranging required signatures on the Final Plat. After approval of the Final Plat, Tews and Swartz extended the arbitrary and discriminatory treatment towards the plaintiffs by subjecting the Canyon Meadow Estates subdivision to ongoing and extensive inspections, reviews, interruptions and requirements to redo public improvements within the subdivision, not required of other subdivisions similarly situated, to the expense and damage of the plaintiffs. (Plaintiffs' Complaint, ¶ 29).

Tews and Swartz, and other Village officials and agents, also continuously failed to adequately control the flow of water in the storm sewers from adjacent suburbs under Waukesha Avenue through an uncovered ditch across the plaintiffs' subdivision, causing extensive erosion, flooding and changes in the hydrology, soils and vegetation on lands contained within the subdivision, to the expense and damage of the plaintiffs. (Plaintiffs' Complaint, ¶ 30).

The plaintiffs prepared a Notice of Circumstances of Claim ("Notice") and an Itemized Claim, and served the same upon Tews on or about March 4, 1996, and on Swartz and the Village on or about March 8, 1996, pursuant to § 893.80(1), Wis.Stats. The plaintiffs received no response thereafter to their Notice and Itemized Claim, which are therefore deemed denied pursuant to § 893.80(1)(g), Wis.Stats. (Plaintiffs' Complaint, § 31).

As stated previously, the plaintiffs' complaint contains five claims (or causes of action). The first claim is asserted against Tews and Swartz, in their official capacities, and the Village Board. The plaintiffs claim that "in failing to approve [p]laintiffs' First Plat of Canyon Meadow Estates so as to require a new plat with fewer lots and to require a conveyance of lands by [p]laintiffs to Tews personally as a condition for approval of the redesigned Plat, in delaying approval of [p]laintiffs' redesigned Plat and subjecting the development of the subdivision to unusual and discriminatory review and interruption, and in burdening [p]laintiffs' property with excessive runoff water from adjoining suburbs violated [p]laintiffs' rights and privileges under the Fifth and Fourteenth Amendments to the United States Constitution by creating a taking of [p]laintiffs' property without just compensation and denying [p]laintiffs' procedural and substantive due process and equal protection of the law." (Plaintiffs' Complaint, ¶ 34).

In addition to seeking compensatory damages from all three defendants, the plaintiffs seek punitive damages from defendants Tews and Swartz, in their official capacities. (Plaintiffs' Complaint, ¶ 36).

Again, as I previously noted, the remaining four claims all arise under state law. The plaintiffs' second claim mirrors the constitutional allegations of the first claim. The only difference is that the alleged violations are under the Wisconsin Constitution rather than the United States Constitution. The third claim is for private nuisance stemming from the aforedescribed surface water being collected and channeled towards, and ultimately discharged on to, the plaintiffs' subdivision. The fourth claim is for negligence in the

defendants' failure "to protect [p]laintiffs from unreasonable and excessive discharges of surface waters from adjacent subdivisions by approving, implementing, and failing to correct the storm water drainage system which discharges onto [p]laintiffs' property." (Plaintiffs' Complaint, ¶ 48). Finally, the fifth claim is directed only against Tews, in his individual capacity. Specifically, the plaintiffs' fifth claim alleges that "[t]he actions of Tews in using his official position to coerce and intimidate [p]laintiffs to convey title to a parcel of land to him for less than fair consideration constitutes a conversion of [p]laintiffs' property by unlawful means." (Plaintiffs' Complaint, ¶ 51).

Obviously, in order for the court to ascertain whether the plaintiffs' complaint fails to state a claim upon which relief can be granted, each claim of the complaint must be examined.

### Analysis

### A. First Claim: Civil Rights Violation

In their first claim, the plaintiffs allege that the defendants violated their Fifth and Fourteenth Amendment rights by taking their property without just compensation and by denying their procedural and substantive due process and equal protection rights. According to the plaintiffs, their rights were violated when: (1) the defendants failed to approve the plaintiffs' first plat of Canyon Meadow Estates, and instead required a new plat with fewer lots and a conveyance of land to Tews personally; (2) the defendants delayed approval of the redesigned plat and subjected the development of the subdivision to unusual and discriminatory review and interruption; and, (3) the defendants burdened the plaintiffs' property with excessive runoff water storm sewers draining from adjoining suburbs onto the plaintiffs' land. Each portion of the plaintiffs' first claim will be considered separately, in the context of the constitutional violations alleged.

### 1. Failure to Approve First Plat; Requiring Second Plat With Personal Conveyance to Tews

At first blush, it would appear that the plaintiffs are alleging a takings claim against the defendants as a result of the buffer strip conveyed to Tews. In order to succeed on a takings claim, the plaintiffs are required to have first exhausted their state remedies. See, *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir.1994). This varies from the general rule governing civil rights claims, which is that state remedies need not be exhausted before an action can be brought in federal court. *Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

The plaintiffs argue that this is not a "regulatory" taking—i.e., one that was effected because of zoning or local regulations. Instead, the plaintiffs characterize this as a "traditional" taking—the "vindictive and discriminatory treatment which they received at the hands of two government officials who used their positions to harass, intimidate and economically damage the plaintiffs." (Plaintiffs' Brief in Response to Defendants' Motion to Dismiss ("Plaintiffs' Response"), p. 8). According to the plaintiffs, the constitutional rights violated are those provisions of the Fifth and Fourteenth Amendments which guarantee the plaintiffs that they will receive fair and equal treatment from government officials. (Plaintiffs' Response p. 9). As a result, the plaintiffs allege that their claim is one for "unconstitutional conditions," or for due process and equal protection violations, but it is not a takings claim.

The defendants argue that the plaintiffs bargained away some rights in order to develop the subdivision, and cannot now allege constitutional violations. The defendants analogize this case to *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177 (7th Cir. 1996). In *Covington*, the plaintiff had acquired all but one of the lots comprising Whitehall Park, an plot of land in the Village of Oak Brook. The plaintiff wished to develop Whitehall Park into a residential subdivision. William Bailes ("Bailes") owned the remaining lot. Bailes opposed the plan and informed the plaintiff that, in light of his connections with the Oak Brook Village Board of Trustees, the Board would halt the project if his concerns were not met. *Id.* 77 F.3d at 178. Indeed, individual trustees from the Board informed Covington that its

plans would not move forward until Bailes was satisfied. As a result, Covington agreed to give Bailes portions of certain lots and to build a berm, a fence and to landscape Bailes' property. In exchange, Bailes withdrew his opposition to Covington's planned development. The Board of Trustees thereafter promptly approved Covington's subdivision proposal.

Two years later, Covington filed an action against Bailes and the Village of Oak Brook alleging a conspiracy to violate its due process rights in violation of 42 U.S.C. §§ 1983 and 1985(3). The district court dismissed the complaint finding that Covington's failure to pursue a final determination from the Oak Brook Village Board of Trustees on the original subdivision plat, without the benefits given to Bailes, prevented the plaintiff from establishing that the defendants "took" any property at all. Id.

The Seventh Circuit affirmed, holding that the action was premature, because "to succeed on its takings and due process claims, Covington first must show that it has availed itself of state court remedies." *Id.* 77 F.3d at 179. "A plaintiff must demonstrate a final decision on 'a developmental plan submitted, considered, and rejected by the governmental entity.'" *Id.* (*citing, Unity Ventures v. County of Lake*, 841 F.2d 770, 775 (7th Cir.), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988)). In conclusion, the Seventh Circuit held that:

> Covington's property was not "taken." Rather Covington voluntarily decided to bargain some property interests away in order to enhance its ability to develop a subdivision. Having reaped the benefit of its bargain, Covington cannot turn to the Constitution to escape its contractual obligations. If Covington wished to contest the political process in which this exchange took place, the proper forum was in the state courts.

*Id.*

The facts in the instant action are strikingly similar to those in *Covington*. Both plaintiffs are entities which wanted to develop subdivisions. In both cases the defendants included persons who initially opposed the subdivisions, as well as the respective boards of the villages where the proposed subdivisions were located. In both cases, the plaintiffs' proposed plats were not voted on by the village boards. In both cases the plaintiffs had to provide some benefit to an individual defendant in order to gain the village boards' approval of the subdivisions. Neither plaintiff used state court remedies to gain approval, or forced a vote upon their proposed plats that did not include benefits to the individual defendant. And, in both cases, the plaintiffs filed actions in federal court alleging violations of their civil rights.

As in *Covington*, the plaintiffs here had state remedies available to them. State court remedies would have included mandamus, to force the Village Board to vote on the first Canyon Meadows Estates' final plat as presented. Or, the plaintiffs could have presented a new plat, with the increased wetlands area designated, but including saleable lots instead of the buffer strip eventually sold to Tews. If the Village Board had rejected this new plat because no buffer strip to Tews was included, such might have arguably constituted state (village) action that was an unconstitutional condition or a denial of due process.

But that is not what happened. Instead, the plaintiffs submitted a new plat with both the increased wetlands area and the buffer strip to Tews not included. The plaintiffs now argue that the Village Board "forced" them to convey the land to Tews personally. However, the plaintiffs never gave the Village Board the opportunity to vote on a plat that included only the increase of wetlands area. As a result, the Village never outright rejected either the first Canyon Meadows Estates plat, or a revised plat that included the increased wetlands area, but not the buffer strip to Tews.

And even if the plaintiffs had given the Village Board the option to outright reject the first Canyon Meadows Estates' final plat, and the Village Board had, in fact, rejected the plat, the plaintiffs would still have had state court remedies available to them. The plaintiffs could have appealed the Village Board's adverse decision to the Village Board of Appeals. Then, if the Board of Appeals'

decision was still unfavorable, the plaintiffs could have sought certiorari review of the decision in Wisconsin state court. *See,* § 236.13(5), Wis.Stats.

What the plaintiffs here did was agree to sell a 1.8 acre parcel of land to Tews in order to develop its subdivision. The fact that the price paid for that land was raised from $1,500.00, to $6,000.00 demonstrates that the plaintiffs bargained with Tews in order to be able to build their subdivision. Now, as in *Covington,* the plaintiffs are attempting to escape their contractual obligations by alleging a constitutional claim. But, because they did not pursue available procedures in challenging the actions or nonactions of the Village Board, the plaintiffs, in light of the holding in *Covington,* cannot now allege constitutional violations.

As stated, the plaintiffs allege that conditioning the approval of the subdivision plat by the Village Board on the conveyance of a buffer strip to Tews was an unconstitutional condition. Under the doctrine of "unconstitutional conditions" the government may not require a person to give up a constitutional right—here the right to receive just compensation when a property is taken for public use—"in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan v. City of Tigard,* 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

■ However, the plaintiffs cannot now allege "unconstitutional conditions." As previously noted, the land conveyed to Tews personally was not "taken," by an official act of the Village Board. Moreover, the land was not conveyed for a public use. Applying *Dolan,* because the land was not taken for a public use, there was no unconstitutional condition.

The plaintiffs also argue that they have both a substantive and procedural due process claim. In alleging a violation of their procedural due process rights, the plaintiffs argue that they were not given a meaningful opportunity to be heard by an impartial decision maker.

■ However, there is no indication that the plaintiffs were denied any procedural due process. Nor could the plaintiffs sustain any such claim. This is because the plaintiffs chose not to use the state remedies that were available to them, including submitting a plat without the buffer strip to Tews marked off; appealing any adverse decision to the Sussex Board of Appeals; seeking mandamus for a failure of the Village Board to act; or, seeking certiorari review from state courts.

Finally, this court finds that the plaintiffs cannot succeed on a claim of denial of their substantive due process rights. In alleging a violation of their substantive due process rights, the plaintiffs argue that the Village Board's (and particularly Tews' and Swartz') decision was arbitrary and irrational. In order to succeed on their substantive due process violation claim, the plaintiffs must show either a separate constitutional violation or the inadequacy of state law remedies. *See, Polenz v. Parrott,* 883 F.2d 551, 556 (7th Cir.1989).

Recent Seventh Circuit cases have discussed the interplay between substantive due process and takings claims:

> The due process clause of the Fourteenth Amendment has been interpreted, though absorption of the takings clause of the Fifth Amendment, to entitle a landowner to just compensation if a state or one of its subdivisions takes his land.

*Gamble v. Eau Claire County,* 5 F.3d 285, 285–86 (7th Cir.1993).

> The other objection to the due process route in a case such as the present one is that it depends on the idea of "substantive" due process. This is the idea that depriving a person of life, liberty or property can violate the due process clause of the Fourteenth Amendment even if there are no procedural irregularities—even if for example, the state after due deliberation has passed a statute establishing procedure for taking private homes and giving them to major campaign contributors or people with red hair, and in taking the plaintiff's home has complied scrupulously with the statute's procedural requirements.

*Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 465 (7th Cir.1988).

In *Coniston Corp., supra,* the plaintiff had waived her takings claim, and was proceeding solely on a claim of denial of due process. In holding that an adverse zoning decision was not a denial of substantive due process, the Seventh Circuit held that "the fact 'that town officials are motivated by parochial views of local interest which work against plaintiffs' plan and which may contravene state subdivision laws' (or we add, local ordinances) does not state a claim of denial of substantive due process." *Id.* 844 F.2d at 467 (*citing, Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982)). In order to prevail on a substantive due process claim, the plaintiffs must allege and prove that "the denial of their proposal is arbitrary and unreasonable bearing no substantial relationship to the public health, safety or welfare." *Id.*

Of course, the difference between *Coniston Corp.* and the instant action is that the alleged taking here was private, not public, as it was in *Coniston.* This factual distinction does not assist the court in deciding this motion, however, because, as stated in *Gamble,* the court "can find no case in the last half century where a taking was squarely held to be for a private use." *Id.* 5 F.3d at 287.

In any event, to state a due process claim, the plaintiffs must first show that they possess a legitimate claim of entitlement to the right being asserted. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). According to the plaintiffs, their legitimate claim of entitlement arises from Chapter 236, Wis. Stats. "If the final plat conforms substantially to the preliminary plat as approved, including any conditions of that approval, and to local plans and ordinances adopted as authorized by law, it is entitled to approval." § 236.11(b), Wis.Stats. The plaintiffs argue that because their first Canyon Meadow Estates' final plat substantially conformed to the preliminary plat, they were entitled to approval by the Village Board. However, that plat did not include the increased wetlands designation that SEWRPC and the Corps found when they conducted their study. The plaintiffs do not dispute that the wetlands had increased. Nor do they challenge the law designating the wetlands. As a result, the plat that did not include increased area designated as wetlands was not entitled to approval.

Moreover, the plaintiffs failed to force, by mandamus, a vote of the Village Board on the plat as presented. Having failed to exhaust their state remedies, the plaintiffs cannot now seek relief in federal court. *See, Gamble,* 5 F.3d at 287 ("*Williamson* holds that even if a taking can be challenged as a denial of substantive due process, a suit based on this theory is premature if the plaintiff has possible state remedies against the zoning regulation or the other state action that he wants to attack," *citing, Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 199–200, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)); *see also Covington,* 77 F.3d at 179 ("To succeed on its takings and due process claim, Covington must first show that it has availed itself of state court remedies.").

The plaintiffs also allege a denial of substantive due process because they claim to have had a property interest in the land conveyed to Tews. The plaintiffs argue that because they cannot now sue for inverse condemnation, they have no state law remedies available to them. The plaintiffs argue that:

[Their] complaint therefore states a cause of action for substantive due process due to the arbitrary and irrational exercise of governmental power by the defendant's [sic] taking of the plaintiff's [sic] property for a purely private purpose and given that such conduct also constitutes several other constitutional violations and is further supported by the fact that the inverse condemnation statute of Wisconsin is unavailable leaving plaintiff[s] without an adequate state remedy.

(Plaintiffs' Response, pp. 21–22).

However, as previously discussed, the plaintiffs have failed to show that their property was taken in the constitutional sense. The plaintiffs have alleged actions by parties who happen to be the Village president and the Village administrator. However, these two individuals do not have the ability, by

themselves, to decide what subdivision plats will be approved or disapproved. That decision is left to the Village Board, which never voted to disapprove a subdivision plat that did not include the conveyance of a buffer strip to Tews. Simply put, there was no denial of the plaintiffs' proposal that was a substantive due process violation, because there was no proposal that was denied. *See, Coniston Corp.,* 844 F.2d at 467.

Although the plaintiffs argue that they are not asserting a claim of improper taking, both their "unconstitutional conditions" claim and their substantive due process claim are necessarily rooted in the law of takings. However artfully the plaintiffs attempt to disguise their claim, a taking is a taking. And, as in *Covington,* the plaintiffs have not pled a takings claim. They cannot allege any official state action because they never presented the Village Board with the opportunity to vote on a plat with increased wetlands and no buffer strip to Tews. Moreover, the plaintiffs have not exhausted their state remedies. While, even if as alleged, Tews used his position on the Village Board to encourage the plaintiffs to bargain with him, and give him a piece of land for below market value, this action does not rise to the level of state action; nor, does it rise to the level of a constitutional violation. It is rather a bargain that the plaintiffs now seek to avoid. The plaintiffs could have chosen another route, and not bargained with Tews. Or, they could have sought state court remedies, however long and arduous they might have been. This they chose not to do. As stated in *Covington,* federal litigation is not a repechage round for losers of earlier contests.

### 2. Delayed Approval; Unusual and Discriminatory Review

The plaintiffs also allege that the unusual delay in approving their second plat and the "unusual and discriminatory review" to which their development was subjected amounts to a denial of their rights under the equal protection clause of the Fourteenth Amendment.

This claim does not assert either of the two common types of equal protection claims: the singling out of member of a vulnerable group for unequal treatment, or a challenge to laws or policies alleged to make irrational distinctions. *Esmail v. Macrane,* 53 F.3d 176, 178 (7th Cir.1995). Instead, as in *Esmail,* the allegations in this case are that a "powerful public official picked on a person out of sheer vindictiveness." *Id.* 53 F.3d at 178.

In *Esmail,* the plaintiff was a liquor store owner, and the defendant was the mayor of the city where the plaintiff's store was located. The defendant denied the plaintiff's renewal liquor license application on "trumped-up" charges. Subsequently, the state courts ordered that the plaintiff's license be renewed. The plaintiff then sued in federal court, alleging a denial of his right to equal protection under the Fourteenth Amendment. According to the complaint, the defendant had renewed the liquor licenses of other people who had engaged in the same or similar conduct as that which had been the reason for the plaintiff's renewal application being denied. The plaintiff listed specific examples of other people who were treated more favorably than the plaintiff.

The Seventh Circuit held that the complaint stated a claim under the equal protection clause of the Fourteenth Amendment. However, the Seventh Circuit also held that the plaintiff would have to prove that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective. *Id.* 53 F.3d at 180.

Similarly, the plaintiffs here allege that Tews and Swartz engaged in unusual delay in approving their second plat, and unusual and discriminatory review of their development, which would be a violation of their Fourteenth Amendment right to equal protection. However, except for one parenthetical phrase in their complaint, the plaintiffs never allege or argue that others, similarly situated, were treated more favorably. Nor do the plaintiffs give any examples of other subdivision developers who were treated better.

As stated in *Esmail,* showing that others, similarly situated, were treated more favorably, is an essential element of an equal

protection claim. "In order to establish a prima facie case of discrimination under the Equal Protection Clause, [the plaintiff] is required to demonstrate, inter alia, that he 'is otherwise similarly situated to members of the unprotected class' and that he 'was treated differently from members of the unprotected class.'" *Johnson v. City of Fort Wayne, Indiana,* 91 F.3d 922, 944–45 (7th Cir.1996) *(citing, McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir.1993); *McMillian v. Svetanoff,* 878 F.2d 186, 189 (7th Cir.1989)). "An equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals." *Smith v. Severn,* 129 F.3d 419, 422 (7th Cir.1997) *(citing, Del Vecchio v. Illinois Department of Corrections,* 31 F.3d 1363, 1386 (7th Cir.1994)).

The Federal Rules of Civil Procedure provide for notice pleading. Complaints need not contain elaborate factual recitations. *Sanjuan v. American Board of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994). Indeed, the plaintiffs are not required to allege with particularity facts showing that they were treated worse than other subdivision developers. "One pleads a 'claim for relief' by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.(citing, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). However, "the set of facts has to be the plaintiff's, not a figment of someone else's imagination. The plaintiff cannot state a claim by attaching a bare conclusion to the facts he narrates." *Kyle v. Morton High School,* No. 97–2081, 144 F.3d 448, 1998 WL 231100 at *6 (7th Cir. May 11, 1998). In the instant action the plaintiffs provide absolutely no facts, or even hypotheses, in their complaint or legal memoranda that would allow the court to imagine how they were treated less favorably than other similarly situated developers.

Merely being treated badly is not enough. Instead, in order to succeed on an equal protection claim, the plaintiffs must show, or at least hypothesize facts, leading to the conclusion that they were treated worse than other similarly situated people. Because they have not done so, they fail to state a claim for a violation of their Fourteenth Amendment right to equal protection upon which relief can be granted.

### 3. Excess Surface Water Runoff

The plaintiffs also allege that a taking occurred because some of the plaintiffs' land is occasionally affected by excess surface water runoff from storm sewers which drain from subdivisions across the road. They allege that this temporary flooding is a temporary taking in violation of the Fifth Amendment. They do not, however, allege how often this condition occurs, to what extent their land is affected or how serious the flooding is.

The defendants argue that the plaintiffs have failed to exhaust their state law remedies on this claim. I agree. Indeed, the plaintiffs, in this very same action, allege a state law claim for nuisance arising from the problems caused by the excess storm drainage sewer runoff. In addition to pursuing a nuisance claim, the plaintiffs may, depending on the extent and regularity of the flooding, be able to pursue a state law claim for inverse condemnation. This is because the plaintiffs allege that part of their land is occasionally unusable due to flooding caused by the design of a storm sewer. In this regard, the facts in this action are similar to the facts in *Hillcrest Golf & Country Club v. City of Altoona,* 135 Wis.2d 431, 400 N.W.2d 493 (Ct.App.1986).

In *Hillcrest,* the plaintiffs, who were owners of a golf course, alleged that the city improperly designed a storm sewer in a neighboring subdivision. This storm sewer discharged onto part of the plaintiff's land, where it eroded substantial portions of the plaintiff's land, leaving huge gullies and the land unfit for use. This, in turn, left the rest of the plaintiff's land unfit for use as a golf course. *Id.* 135 Wis.2d at 434, 400 N.W.2d 493. The Wisconsin Court of Appeals held that the plaintiffs could bring an action for inverse condemnation because, if the plaintiffs' allegations were true, the defendant had taken the plaintiffs' land without just compensation. *Id.* 135 Wis.2d at 436, 400 N.W.2d 493.

Of course, in *Hillcrest* the damage to the plaintiffs' land was permanent, not temporary. The plaintiffs in the instant action allege that the taking via improper storm sewer drainage is temporary. If such is the case, the plaintiffs' being able to successfully pursue an inverse condemnation claim might be problematic. *See, Andersen v. Village of Little Chute*, 201 Wis.2d 467, 549 N.W.2d 737 (Ct.App.1996).

In *Andersen,* the plaintiffs brought an action for taking and nuisance due to the defendant's diverting a storm water drainage system over the plaintiffs' property, creating an eight mile ravine that was between 15 and 35 feet wide, and several feet deep, *Id.* 201 Wis.2d at 474, 549 N.W.2d 737. In finding that the trial court properly refused to adjourn the trial so that the plaintiffs could pursue inverse condemnation proceedings, the Wisconsin Court of Appeals held that, "[s]ection 32.10 does not govern inverse condemnation proceedings seeking just compensation for a temporary taking of land· for public use." *Id.* 201 Wis.2d at 475, 549 N.W.2d 737.

In any event, the bottom line is that whether it is for inverse condemnation, nuisance, or a violation of the Wisconsin Constitution, it would appear that the plaintiffs do have a state remedy available to them for damages arising out of the storm sewer discharge. Such being the case, no federal civil rights action can be maintained to recover damages for such occurrence. *See, Hillcrest,* 135 Wis.2d at 442–43, 400 N.W.2d 493 ("A sec.1983 remedy for a negligent deprivation of constitutional rights is generally available only where no adequate state remedy exists."). As a result, this portion of the plaintiffs' first claim likewise does not state a claim upon which relief can be granted.

In sum, no portion of the plaintiffs' first claim has survived Rule 12(c) scrutiny. Therefore, I recommend that the defendants' motion to dismiss the plaintiff's first claim be granted.

## B. Second, Third, Fourth and Fifth Claims

The plaintiffs' remaining claims all arise under state law. The plaintiffs' second claim mirrors the constitutional allegations of the first claim. However, in the second claim, the violations are alleged to be under the Wisconsin Constitution rather than the United States Constitution. The third claim is for private nuisance based on the result of the storm sewer water drainage. The fourth claim is for negligence arising out of the defendants' failure to protect the plaintiffs from the excess storm sewer water runoff. The fifth claim is against Tews, in his individual capacity. It alleges that Tews converted the plaintiffs' property by using his position to coerce the plaintiffs into conveying the buffer strip to him for less than fair market value.

None of these claims are rooted in the court's diversity jurisdiction. After all, the parties in this action are not of diverse citizenship. Instead, jurisdiction over these supplemental state law claims is conferred via 28 U.S.C. § 1367(a) which states:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

However, because I am recommending dismissal of the plaintiffs' federal claim, I recommend that the district judge decline to exercise jurisdiction over the supplemental state law claims. 28 U.S.C. § 1367(c) states, in pertinent part, that:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—...

(3) the district court has dismissed all claims over which it has original jurisdiction, or ...

That is precisely the situation here. "The general rule is that when as here the federal claim drops out before trial (here way before trial), the federal district court should relinquish jurisdiction over the supplemental

claim." *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.1997) (*citing, Boyce v. Fernandes,* 77 F.3d 946, 951 (7th Cir.1996); *Wright v. Associated Insurance Companies, Inc.,* 29 F.3d 1244, 1251 (7th Cir.1994)). Thus, I recommend that jurisdiction over the supplemental claims be relinquished to the state courts.

### Conclusion

**IT IS, THEREFORE, RECOMMENDED** that the defendants' motion to dismiss plaintiffs' first claim be **GRANTED, WITH PREJUDICE;** and,

**IT IS FURTHER RECOMMENDED** that the defendants' motion to dismiss the plaintiffs' second, third, fourth and fifth claims be **GRANTED, WITHOUT PREJUDICE,** to refile in state court.

Any objection to this Recommendation must be filed with the Clerk of Court, in duplicate, within ten days of service of the same. *See* 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13 (E.D.Wis.). Failure to file a timely objection shall result in a waiver of your right to appeal all factual and legal issues.

June 10, 1998.