**COVINGTON COURT, LIMITED, an Illinois Corporation, Plaintiff–Appellant,**

v.

**VILLAGE OF OAK BROOK, an Illinois Corporation, and William Bailes, individually, Defendants–Appellees.**

No. 95–2229.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1995.

Decided Feb. 22, 1996.

Anthony G. Scariano (argued), Raymond A. Hauser, and Todd K. Hayden (argued), Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for Plaintiff–Appellant.

Jeffrey Kehl, Robert C. Yelton, III, Robert J. Golden, Dowd & Dowd, Chicago, IL, Hugh C. Griffin, Daniel J. Zollner (argued), Leslie J. Rosen, and Robert J. Pugliese (argued), Lord, Bissell & Brook, Chicago, IL, for Defendants–Appellees.

Before BAUER, ROVNER, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

It is an old saw that all politics is local. Covington Court ("Covington") learned this lesson recently in the course of its plans to develop Whitehall Park, a 30 acre tract of land in Oak Brook, Illinois. This case involves Covington's attempt to convert a decidedly local issue into a constitutional takings claim. The district court dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(6), and Covington appeals. We affirm.

## I. Background

Because this case comes to us on appeal from the granting of a motion to dismiss under Rule 12(b)(6), we accept any well-pleaded allegations in Covington's complaint as true. By October 1992, Covington had acquired all but one of the 23 residential lots comprising Whitehall Park. William Bailes owned the remaining lot. In early 1993, Covington submitted a plat of resubdivision and other plans to the Oak Brook Board of Trustees in order to develop the property into a residential subdivision. The proposal included an increase in the number of lots from 23 to 39, revocation of an existing preservation plan, and other changes consistent with residential real estate development. Bailes opposed the redevelopment plans, however, and he informed Covington that in light of his connections with Oak Brook officials, the Board would halt the project if his concerns were not met.

The Board never voted but individual Trustees, including the Board's President, informed Covington that its plans would not move forward until Bailes was satisfied. Covington already had a significant investment in Whitehall Park, so it negotiated with Bailes. By February 19, 1993, the negotiations had succeeded. Pursuant to a written agreement, Covington conveyed portions of its lots to Bailes, landscaped Bailes' property, granted specific easements, created a berm to screen the Bailes residence, and erected a fence to separate Bailes' property from the new development. Good fences may or may not make good neighbors, but in exchange for the approximately $100,000 in land and improvements, Bailes withdrew his opposition to Covington's planned development. With Bailes' support, the Board of Trustees promptly approved Covington's subdivision proposal.

The development proceeded according to plan, but two years later Covington filed suit against both the Village of Oak Brook and Bailes, claiming in Count I that the Board's conditioning its approval on a settlement with Bailes constituted an impermissible taking of property for a private purpose. Counts II and III of Covington's complaint alleged that Oak Brook and Bailes conspired to violate its substantive due process rights in violation of 42 U.S.C. §§ 1983, 1985(3). The district court dismissed the complaint, finding that Covington's failure to pursue a final determination from the Oak Brook Board of Trustees prevented it from establishing that the defendants "took" any property at all. In addition, the district court found that Covington failed to state a due process claim because it did not allege that the defendants' actions were based on any constitutionally protected interest. Because Covington failed to pursue the remedies available to it through the state courts, all three counts failed to state a proper claim.

## II. Standard of Review

We review the grant or denial of a motion to dismiss under Rule 12(b)(6) *de novo*. We take all well-pleaded allegations as true, drawing all reasonable inferences in favor of the non-moving party. *Starnes v.*

*Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir.1994).

█ The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation." While claims under this Amendment involve the taking of property for public purposes, this court also has noted that a governmental taking of property for a private purpose might raise due process concerns under the Fifth Amendment as incorporated by the Fourteenth Amendment. *See Gamble v. Eau Claire County,* 5 F.3d 285, 287 (7th Cir.1993). Regardless of the purpose of the taking, however, due process challenges are premature if the plaintiff has not exhausted possible state remedies by which to attack the zoning regulation or other state action. *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 188–89, 105 S.Ct. 3108, 3117, 87 L.Ed.2d 126 (1985).

### III. Analysis

Covington argues that the requirement that a plaintiff exhaust its state court remedies might not apply when a state takes property for a purely private rather than a public use. *See, e.g., Gamble,* 5 F.3d at 286–87; *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398 (9th Cir.1989). To this end, Covington claims that Oak Brook's violations of its substantive due process rights entitle it not merely to "just compensation", but to full common law damages. However, this court has held

> that a property owner may not avoid *Williamson* by applying the label "substantive due process" to the claim. So too with the label "procedural due process." Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court.

*River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 167 (7th Cir.1994).

█ To succeed on its takings and due process claims, Covington first must show that it has availed itself of state court remedies. This it cannot do. Covington argues that if it had not caved in to Bailes, the Board of Trustees would have rejected its planned development, thereby denying Covington the economic viability of its property. However, whether a vote of the Oak Brook Board of Trustees *would have* rejected Covington's initial plans is of no consequence. A plaintiff must demonstrate a final decision on "a development plan submitted, considered, and rejected by the governmental entity." *Unity Ventures v. Lake County,* 841 F.2d 770, 775 (7th Cir.), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). Covington submitted a plan, but no vote ever took place, and Covington took no further action.

Had Covington persisted, it could have waited for a vote on preliminary approval by the Board of Trustees. If the Board refused to vote, Covington could have petitioned the state court for a writ of mandamus or a common law writ of certiorari to compel a vote on the plan within 90 days of its initial submission. *See* 65 ILCS 5/11–12–8. Instead, Covington *chose* to negotiate with Bailes, and the two parties reached an agreement that enabled the Whitehall Park project to go forward. Covington's instant lawsuit is an attempt to circumvent that decision.

We frequently have reminded litigants that federal courts are not boards of zoning appeals. *See River Park,* 23 F.3d at 165. In *River Park,* a property owner submitted a plan to build a residential subdivision, but when a member of the Highland Park City Council organized a citizens' committee to object to the development, delay ensued. When further delays resulted in the developer's bankruptcy, it filed a lawsuit alleging that the city had violated its due process rights by failing to reach a decision on its zoning application. On appeal, this court noted:

> Instead of asking for relief from the state courts, River Park went along with the political process until it was too late. It lost the political fight. Federal litigation is not a *repêchage* round for losers of earlier contests, or for those who overslept and missed the starters' gun.

*River Park,* 23 F.3d at 167. Covington is in about the same boat.

## IV. Conclusion

Covington's property was not "taken." Rather, Covington voluntarily decided to bargain some property interests away in order to enhance its ability to develop a subdivision. Having reaped the benefit of its bargain, Covington cannot turn to the Constitution to escape its contractual obligations. If Covington wished to contest the political process in which this exchange took place, the proper forum was in the state courts. Recognizing this, the district court properly dismissed Covington's complaint. That decision is

AFFIRMED.