199 F.3d 363 (7th Cir. 2000)
 ARNOLD T. FORSETH, RANDY S. FORSETH, and A&R LAND COMPANY, a Wisconsin General Partnership, Plaintiffs-Appellants,
v.
VILLAGE OF SUSSEX, a Wisconsin Municipal Corporation, JOHN H. TEWS, Individually and as Village President, and M. CHRIS SWARTZ, as Village Administrator, Defendants-Appellees.
 No. 98-3751
 In the United States Court of Appeals For the Seventh Circuit
 Argued February 23, 1999
Decided January 3, 2000
 
 Appeal from the United States District Court for the Eastern District of Wisconsin.
 No. 97 C 215--Rudolph T. Randa, Judge.[Copyrighted Material Omitted]
 Before COFFEY, RIPPLE and ROVNER, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 On March 5, 1997, Plaintiffs Charles and Randy Forseth (the "Forseths") filed suit under 42 U.S.C. sec. 1983 and under Wisconsin state law in the United States District Court for the Eastern District of Wisconsin against Defendants Village of Sussex ("Village"), the Village's former President, John H. Tews ("Tews"), and the Village's Administrator, M. Chris Swartz ("Swartz"). The Forseths claimed that Defendants wrongfully interfered with their development of a tract of land. The court dismissed the action without prejudice pursuant to Federal Rule of Civil Procedure 12(c), holding that the Forseths' federal claims were "not ripe for adjudication." We AFFIRM IN PART AND REVERSE IN PART AND REMAND WITH INSTRUCTIONS.
 
 I. BACKGROUND
 
 2
 A. The Forseths' Land Development and Events Leading to the Dispute
 
 
 3
 In July 1992, the Forseths, doing business as A&R Land Company, purchased thirty acres of land in the Village of Sussex, Waukesha County, Wisconsin, with the intention of developing the land as a residential subdivision. In August 1992, pursuant to Wisconsin law, the Forseths submitted a preliminary plat[1] of their property to the Village Plan Commission ("Plan Commission"). The Plan Commission denied the preliminary plat because: (1) the plat did not properly delineate the wetlands on the property; and (2) a number of the proposed lots had direct driveway access to an arterial highway. Consequently, the Forseths altered their plan to comply with the directions of the Plan Commission and in January 1993, submitted a revised preliminary plat which addressed the concerns of the Plan Commission. The Plan Commission approved the revised preliminary plat and after approval was received from the appropriate state and county agencies defined in Wis. Stat. sec. 236.12 and Village Ord. sec. 18.0302, the Sussex Village Board ("Village Board") approved the preliminary plat in September 1993, which in turn became the final plat. The Forseths needed only one final step--to obtain approval of the final plat by the Village Board.
 
 
 4
 Before the Forseths submitted the final plat for Village Board approval, Tews, whose homestead abutted four lots of the proposed development, was elected President of the Village Board. Plaintiffs made several allegations in their complaint and brief submitted in opposition to the motion to dismiss about the conduct of Village Board President Tews and Village Administrator Swartz, including, that even before he was elected President, Tews made various efforts to obstruct and/or delay the Forseths' subdivision development because Tews' homestead was in his family for decades and overlooked the Forseths' property. Plaintiffs further contended that Tews "became angered and frustrated at the prospect of streets and houses disrupting the natural area and obstructing his views"; thus, Tews "calculated a plan of harassment . . . designed to exact retaliation and vengeance" and with the assistance of Swartz, engaged "in a series of actions [designed] to prevent and obstruct" the Forseths' proposed development and "ultimately exact a coveted piece of land Tews was previously unable or unwilling to fairly acquire--even from his own family." For example, in February 1993, the Forseths point out in their complaint that Tews claimed that Native American campgrounds of archeological or historical significance were located within the Forseths' subdivision. However, the State Historical Society of Wisconsin could not substantiate this claim.
 
 
 5
 Plaintiffs also allege in their complaint that in October 1993, Village Board President Tews persuaded the Army Corps of Engineers to perform a wetlands survey of the Forseths' property. The Corps agreed and determined that the size of the wetlands had increased about 100 feet westward since its 1982 survey, thereby reducing the area available for development. Because the increased wetlands had not been taken into account in the Forseths' plat designs, the Village Board denied their final plat.
 
 
 6
 The Forseths set out to revise their plat once more. But before they submitted another revised plat, in their complaint and brief opposing the motion to dismiss, Plaintiffs allege that President Tews, with the assistance of Administrator Swartz, conceived of a plan that would require the Forseths "to convey a buffer strip to Mr. Tews on both sides where his homestead bordered" the planned development, in exchange for Village Board approval of their subdivision. The Forseths further claimed in their complaint that they reluctantly agreed to President Tews' condition "because they were personally frustrated and financially strained by the delays and expenses incurred in connection with the prior two proposed plats." The Village Board went along with the conveyance and approved the revised final plat on the express condition that the buffer strip would be conveyed to Tews.[2] In February 1995, the Forseths "reluctantly" conveyed the buffer strip, valued at $51,000, to Tews for merely $6,000.[3] In addition to this "forced" conveyance, the Forseths allege that Tews, Swartz, and the Village (by way of the Village Board and Plan Commission), further reduced the size of the Forseths' development by failing to adequately control the flow of storm water run-off from adjacent subdivisions, which in turn increased the area of wetlands within the development. The Forseths contend that this discharge not only caused erosion, flooding, and soil damage, but also reduced the area of developable land by five lots. Lastly, Plaintiffs allege in their complaint that Tews and Swartz, "while acting under color of state law, . . . [acted] maliciously with intent to injure Plaintiffs or with reckless disregard of Plaintiffs' rights."
 
 B. The District Court's Opinion
 
 7
 In early March 1996, the Forseths filed a Notice of Circumstances of Claim and an Itemized Claim and served them upon Defendants pursuant to state law governing actions against a governmental subdivision and its officers. See Wis. Stat. sec. 893.80(1). Because Defendants failed to respond after 120 days, the Forseths' claim was deemed disallowed under Wisconsin law. See id. On March 5, 1997, the Forseths filed suit in the United States District Court for the Eastern District of Wisconsin, seeking damages under 42 U.S.C. sec. 1983 with the filing of a substantive due process claim, an equal protection claim and two takings claims under the 5th and 14th Amendments. They also asserted various state law claims, including state constitutional violations, nuisance, negligence, and conversion.[4]
 
 
 8
 Defendants, citing a lack of subject matter jurisdiction, moved to dismiss the Forseths' complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants argued that the complaint failed to state a claim upon which relief could be granted because all four of the Forseths' federal claims failed to satisfy the ripeness requirements set forth by the Supreme Court in Williamson County Reg. Planning Comm'n. v. Hamilton Bank, 473 U.S. 172 (1985).
 
 
 9
 Because Defendants had already filed their answer, the district court construed Defendants' motion to dismiss as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[5] On September 25, 1998, the trial judge granted the motion to dismiss the federal claims because they were "not ripe for adjudication" and refused to exercise supplemental jurisdiction over the state law claims. See Forseth v. Village of Sussex, 20 F. Supp. 2d 1267, 1276 (E.D. Wis. 1998). The Forseths filed a timely appeal.
 
 II. ISSUES
 
 10
 On appeal, we are presented with the following issues: (1) Are the Forseths' federal claims subject to the ripeness requirements of Williamson; and (2) if they are, do their federal claims satisfy those requirements?III. ANALYSIS
 
 A. Standard of Review
 
 11
 We review de novo a district court's decision to grant a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[6] We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Gustafson v. Jones, 117 F.3d 1015, 1017 (7th Cir. 1997); Porter v. DiBlasio, 93 F.3d 301, 305 (7th Cir. 1996). Resolution of the case pursuant to Rule 12(c) is appropriate only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989). Additionally, the complaint should merely narrate a claim: "Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint. . . . A complaint may not be dismissed unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'" Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Indeed, "[t]hat is why we have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief. If the extra assertions make out a claim, then the complaint stands." Albiero, 122 F.3d at 419 (citation omitted).
 
 B. The Applicability of Williamson
 
 12
 In Williamson County Reg. Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 193-94 (1985), the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims which precluded federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation. Indeed, this Circuit has followed Williamson and held, "[A] property owner may not avoid Williamson by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.' Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994) (citation omitted). Because we have subject matter jurisdiction over only those cases that are "ripe for adjudication",[7] we must initially determine whether the Forseths' federal claims are subject to Williamson's ripeness requirements.
 
 
 13
 1. Plaintiffs' Substantive Due Process Claim
 
 
 14
 The Forseths' substantive due process claim arises from Defendants' act of conditioning approval of the final plat on the Forseths' agreement to convey a buffer strip to Village Board President John Tews personally. Although we have recognized the potential for a plaintiff to maintain a substantive due process claim in the context of land use decisions, see, e.g., Doherty v. City of Chicago, 75 F.3d 318, 325 (7th Cir. 1996); Harding v. County of Door, 870 F.2d 430, 431 (7th Cir. 1989); Polenz v. Parratt, 883 F.2d 551, 558 (7th Cir. 1989); Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467-68 (7th Cir. 1988), we have yet to excuse any substantive due process claim in the land-use context from Williamson's ripeness requirements.
 
 
 15
 In Gamble v. Eau Claire County, we distinguished substantive due process claims from takings claims and questioned whether, under certain circumstances, the former required Williamson ripeness:
 
 
 16
 The plaintiff's claim that she was denied substantive due process is different, however, from her claim that she was denied just compensation. . . . It is not obvious that this alternative approach [substantive due process] to obtaining relief in a case in which the government has taken one's property should require exhaustion of state remedies. By this approach, the plaintiff is not seeking an award of compensation. . . . but that she is entitled to get her land back or its pecuniary equivalent.
 
 
 17
 Gamble, 5 F.3d at 286 (citations omitted) (emphasis added).
 
 
 18
 Here, the Forseths, in essence, base their due process claim on the fact that a two acre portion of their land was taken solely for private use, as a buffer strip for Village Board President Tews. Similarly, Gamble stated that substantive due process
 
 
 19
 has its greatest appeal when the state acts outside its eminent domain powers, for example by taking property for a private rather than for a public use.
 
 
 20
 Suppose a state passed a law which said that the governor could take away a person's home and give it to his brother-in-law. It could be argued that such a law, even if meticulously enforced in accordance with the requirements of due process in the sense of fair procedure, would, if the law were as arbitrary and unreasonable as it seemed, deprive the homeowner of property without due process of law.
 
 
 21
 Gamble, 5 F.3d at 286-87. The hurdle, however, would be high and difficult; to succeed, a plaintiff would have to demonstrate that the government's conduct has no "connection however tenuous to some at least minimally plausible conception of the public interest." See Gamble, 5 F.3d at 287;[8] see also Himelstein v. City of Fort Wayne, 898 F.2d 573, 577 (7th Cir. 1990); Harding, 870 F.2d at 431; Coniston, 844 F.2d at 467-68. Otherwise, should there be a minimally conceivable public purpose, the "label 'substantive due process'" does not matter, River Park, Inc., 23 F.3d at 167, because Williamson ripeness would apply.
 
 
 22
 Whatever door that was left open by Gamble's observation that "[t]he requirement that the contemplated use [of taken land] be public has been severely attenuated" such that "[w]e can find no case in the last half century where a taking was squarely held to be for a private use," Gamble, 5 F.3d at 287 (citation omitted), was slammed shut by Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177 (7th Cir. 1996). In Covington Court, we held that even where a state takes property for "a purely private rather than a public use," on "takings and due process claims, [a plaintiff] first must show that it has availed itself of state court remedies." See Covington, 77 F.3d at 179-80.
 
 
 23
 Further, our facts here are unmistakably similar to Covington Court. In Covington Court, as a condition of moving their development plans forward by the local board of trustees, the developer conveyed portions of the lots to a private party and even landscaped land, granted easements and erected a fence for the private party.[9] See Covington Court, 77 F.3d at 178. Despite the private nature of these extorted acts, we refused to excuse the developer from Williamson's ripeness requirements. See id. at 179.[10]
 
 
 24
 So too here do the Forseths allege that the defendants have taken their land for the sole purpose of satisfying the private aesthetic preferences of the Village Board President. Despite the troubling facts and allegations of the instant case, particularly the significant private pecuniary gain achieved by President Tews and the questionable use of his governmental position and authority, we are forced to conclude that Plaintiffs' are bound by Covington Court and Williamson. Because the Forseths' "labeled" substantive due process claim falls within the framework for takings claims, see Covington Court, 77 F.3d at 179; see also Hager v. City of West Peoria, 84 F.3d 865, 869-70 (7th Cir. 1996); Gosnell v. City of Troy, 59 F.3d 654, 657 (7th Cir. 1995); Coniston Corp., 844 F.2d at 464-66, we hold that their substantive due process claim is subject to Williamson's requirement that they seek a final decision and pursue state court remedies before federal courts have jurisdiction to hear their case.
 
 2. Plaintiffs' Equal Protection Claim
 
 25
 The Forseths' equal protection claim arises from both Defendants' alleged act of conditioning approval of the Forseths' final plat on their agreement to convey a buffer strip to John Tews and from Defendants' other alleged conduct that obstructed and delayed the Forseths' subdivision development. The Forseths' equal protection claim, however, stands on firmer ground than their substantive due process claim. Because this Circuit's rulings relating to equal protection claims in the land-use context have yet to make clear the applicability of Williamson's ripeness requirements, we take this opportunity to articulate the applicable standards.
 
 
 26
 This Circuit has read Williamson broadly, rejecting attempts to label "takings" claims as "equal protection" claims and thus requiring "ripeness." See Unity Ventures v. County of Lake, 841 F.2d 770, 775 (7th Cir. 1988) (stating that"[a]lthough the plaintiff's suit is not premised on a takings claim, . . . we agree with the Ninth Circuit in Herrington that the ripeness analysis used in those cases applies as well to equal protection and due process claims"). However, this Circuit recognized in Hager v. City of West Peoria that bona fide equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to Williamson ripeness. See Hager, 84 F.3d at 870. Absent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate "governmental action wholly impossible to relate to legitimate governmental objectives." Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995); see also Olech v. Village of Willowbrook, 160 F.3d 386, 387-88 (7th Cir. 1998); Hager, 84 F.3d at 872; Unity Ventures, 841 F.2d at 775 n.2.
 
 
 27
 A survey of this Circuit's previous holdings that maintained equal protection claims in the land use context, reveal that the Esmail standard was satisfied when the equal protection claim was based on: (1) the malicious conduct of a governmental agent, in other words, conduct that evidences a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective," Esmail, 53 F.3d at 180; or (2) circumstances, such as prayer for equitable relief and a "claim [that] would evaporate if the [governmental body] treated everyone equally," that sufficiently suggest that the plaintiff has not raised "just a single takings claim with different disguises." Hager, 84 F.3d at 870.
 
 
 28
 Here, the Forseths have indeed alleged that the Defendants, through the actions of the Board President and Village Administrator, acted "maliciously" in conditioning the plat approval on the conveyance of the buffer strip as well in failing to prevent the storm water run-off on their property. Because we are obligated to accept all well-pleaded allegations as true and accept all reasonable inferences drawn from them, see Porter, 93 F.3d at 305, we conclude that the Forseths have demonstrated a bona fide equal protection claim. Thus, we hold that the Forseths' equal protection claim is independent from their takings claim and accordingly, is not subject to Williamson's ripeness requirements. Consequently, because Plaintiffs had a viable claim for purposes of Rule 12(c) review, we conclude that the district court erred in dismissing Plaintiffs' equal protection claim for lack of ripeness.
 
 
 29
 We are also of the opinion that the facts of this case present sufficient grounds to allow the Forseths to maintain their equal protection claim on the basis of the questionable conduct of Village Board President Tews while in office. Unlike any of this Circuit's previous holdings on the issue of equal protection in the land-use context, Plaintiffs alleged that a member of the governing body denied them equal protection under the law when he demanded and received significant personal pecuniary gain by the abuse of his governmental authority. The Forseths allege that Tews, in his official capacity conceived of and engineered the review of Plaintiffs' plat in order to receive a buffer strip to his property at a significant discount. As a governmental actor, Tews' conduct, as alleged by Plaintiffs, raises significant questions about whether he abused his official authority for personal gain at the expense of the Forseths' right to equal protection under the law. Thus, we hold that these facts as alleged by Plaintiffs would be sufficient to demonstrate that the actions of Defendants were taken for improper purposes "wholly unrelated to any legitimate state objective," see Esmail, 53 F.3d at 180, and thus, dismissal under Rule 12(c) was inappropriate.[11]
 
 3. The Forseths' Takings Claims
 
 30
 The Forseths also made two takings claims under the 5th and 14th Amendments. First, they argue that the conveyance to Tews was an "unconstitutional condition" because they were required to give up land without just compensation in exchange for a government benefit (i.e., approval of the final plat) having little to do with the required conveyance. See Dolan v. City of Tigard, 512 U.S. 374, 385 (1994). This is essentially a takings claim, so Williamson is directly applicable. See Biddison v. City of Chicago, 921 F.2d 724, 728-29 (7th Cir. 1991); Himelstein, 898 F.2d at 576.
 
 
 31
 The Forseths' second takings claim is based on the Village's design and/or construction of the current drainage system that causes storm water to run-off from surrounding subdivisions onto their land, which they claim constitutes a temporary taking by periodic invasion. This too is a garden variety takings claim clearly subject to the ripeness requirements of Williamson.[12] See Biddison, 921 F.2d at 728-29; Himelstein, 898 F.2d at 576.
 
 
 32
 C. The Satisfaction of Williamson's Requirements
 
 
 33
 Having concluded that Williamson is applicable to the Forseths' federal substantive due process and takings claims, we must examine whether these claims satisfy the ripeness standard.[13] As previously discussed, before a federal court may adjudicate land-use disputes, Williamson mandates the satisfaction of two requirements: (1) the "Final Decision Requirement": the plaintiff must demonstrate that he or she received a "final decision" from the relevant government entity, 473 U.S. at 186-87; see also Unity Ventures, 841 F.2d at 774; and (2) the "Exhaustion Requirement": the plaintiff must have sought "compensation through the procedures the State has provided for doing so." Williamson, 473 U.S. at 194; see also Hager, 84 F.3d at 869.
 
 
 34
 Because the policies underlying the exhaustion requirement often overlap with, but are distinct from those underlying the finality requirement, see Williamson, 473 U.S. at 193-94, we address the exhaustion prong first. The Supreme Court has explained that the exhaustion requirement "stems from the Fifth Amendment's proviso that only takings without 'just compensation' infringe that Amendment." Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 734 (1997). After all, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. (citation and quotation omitted); see also Williamson, 473 U.S. at 194 n.13 ("[B]ecause the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a sec. 1983 action.") (emphasis in original); Gamble, 5 F.3d at 286 ("[U]ntil he exhausts his remedies for obtaining a compensation award or equivalent relief from the state . . . [a landowner] cannot know whether he has suffered the only type of harm for which the just-compensation provision of the Constitution entitles him to a remedy.") (citations omitted).
 
 
 35
 Here, the Forseths have failed to utilize their state law remedies. They could have sought statutory certiorari review of the Plan Commission's or Village Board's decisions, see Wis. Stat. sec. 59.694(10), or applied for a common law writ of certiorari. See State ex rel. Johnson v. Cady, 185 N.W.2d 306, 311 (Wis. 1971). They also could have appealed the Planning Commission's or Village Board's decisions, see Village of Sussex Zoning Ord. sec. 17.1211, or brought a suit for inverse condemnation under Wisconsin statutory law or the state Constitution. See Wis. Stats. sec. 32.10; Wis. Const. art. I, sec. 13. But the Forseths did none of these. Indeed, they implicitly acknowledge their failure to pursue available state remedies at that juncture by filing a substantially similar complaint in Wisconsin state court alleging claims under Wisconsin law following the district court's dismissal of this case. See Forseth v. Tews, 98-CV-1525 (Waukesha County Cir. Ct., filed Dec. 3, 1998). Accordingly, we conclude that the Forseths have not exhausted their state remedies and hold that because this Circuit has applied Williamson's exhaustion requirement strictly, warning that "[l]itigants who neglect or disdain their state remedies are out of court, period," River Park, 23 F.3d at 165, see also Hager, 84 F.3d at 869-70; Covington, 77 F.3d at 179; Gamble, 5 F.3d at 287- 88, Plaintiffs substantive due process and takings claims are not ripe for adjudication in federal court.[14] Should Plaintiffs sufficiently pursue their case in state court only to be denied relief, they may then seek relief in federal court on their federal substantive due process.[15]
 
 IV. CONCLUSION
 
 36
 We hold that the Forseths' federal substantive due process and takings claims were not ripe, and that the district court was correct to dismiss those claims. However, for purposes of a Rule 12(c) motion, Plaintiffs successfully pleaded and maintained a bona fide equal protection claim, which was not subject to Williamson ripeness. Further, we remand to the district court to resolve whether, with only the equal protection federal claim remaining, the court maintains supplemental jurisdiction over the Forseths' state law claims. See 28 U.S.C. sec. 1367; Van Harken v. City of Chicago, 103 F.3d 1346, 1354 (7th Cir. 1997), cert. denied, 520 U.S. 1241 (1997). Accordingly, we AFFIRM the district court's dismissal of the Forseths' federal substantive due process and takings claims without prejudice and REVERSE the court's dismissal of Forseths' equal protection claim and REMAND the remaining claims to the district court for proceedings consistent with this opinion.
 
 
 37
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
 
 
 
 Notes:
 
 
 [1]
 The Forseths' preliminary plat proposed a residential subdivision called "Meadow Canyon Estates."
 
 
 [2]
 Plaintiffs contend in their complaint that the buffer land strip condition was expressly included in the accompanying ordinance granting re-zoning and the conditional use permit for the Forseths' property, both of which were signed by Tews and Swartz in their official capacities. They further contend that they "were required by the Village to enter into a Subdivider's Agreement which incorporated by reference all of the obligations set forth in the rezoning ordinance and the conditional use permit."
 
 
 [3]
 The Forseths contend that Tews initially offered $1,500, but ultimately agreed to pay $6,000 for the 1.85 acre buffer land strip.
 
 
 [4]
 State law claims against a Wisconsin governmental subdivision or its officers must be brought within six months of the disallowance of a claim. See Wis. Stat. sec. 893.80(1)(g). Here, however, because Defendants did not serve a formal notice of disallowance on the Forseths, their claims were deemed disallowed, see Wis. Stat. sec. 893.80(1), rendering the six month deadline inapplicable. See Blackbourn v. School Dist. of Onalaska, 497 N.W.2d 460, 461-62 (Wis. Ct. App. 1993).
 
 
 [5]
 A motion to dismiss for failure to state a claim upon which relief can be granted "shall be made before pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b) (emphasis added). "After the pleadings are closed . . . any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).
 
 
 [6]
 As discussed above, Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). However, because Defendants previously filed their answer, the district court correctly construed Defendants' motion as a motion for judgment on the pleadings under Rule 12(c). See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 n.3 (7th Cir. 1998). Nonetheless, our review under both rules is the same: we determine if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989); see Northern Indiana Gun, 163 F.3d at 452 (citing Frey v. Bank One, 91 F.3d 45, 46 (7th Cir. 1996)); Fallimento v. Fischer Crane Co., 995 F.2d 789, 791 (7th Cir. 1993).
 
 
 [7]
 In a later opinion, the Supreme Court distinguished Williamson's prudential ripeness requirements from ripeness requirements drawn from Article III limitations on judicial power. See Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 733 n.7 (1997).
 
 
 [8]
 Even if Plaintiffs made such a showing, there is authority that when a taking is made for wholly private use, the takings clause and not substantive due process provides the analytical framework. Thus, Williamson's ripeness requirements would still apply. See, e.g., Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 179 (7th Cir. 1996) (holding that Williamson's ripeness analysis applies "[r]egardless of the purpose of the taking"); Coniston Corp., 844 F.2d at 464-66 (7th Cir. 1988) ("[T]he takings clause may be broad enough to take care of the problem without the help of the due process clause."); see also Gamble, 5 F.3d at 287; A.A. Profiles, Inc. v. City of Ft. Lauderdale, 850 F.2d 1483, 1487-88 (11th Cir. 1988); Wheeler v. City of Pleasant Grove, 664 F.2d 99, 100 (5th Cir. 1981).
 
 
 [9]
 Covington Court owned 22 of 23 residential lots comprising Whitehall Park. See Covington Court, 77 F.3d at 178. When Covington planned a subdivision on this property, the owner of the remaining lot, William Bailes, informed Covington that in light of his connections with the local officials, the Oak Brook Board of Trustees would halt Covington's project until his concerns were met. Id. Bailes had so much influence over the local board members that even the board president informed Covington Court that "its plans would not move forward until Bailes was satisfied." Id. Consequently, Covington Court did not pursue a vote from the Board, but instead negotiated with Bailes and met his concerns. Id. The Board subsequently approved Covington's subdivision proposal. Id.
 
 
 [10]
 In Covington Court, we affirmed the district court's grant of a motion to dismiss under Rule 12(b)(6) because the plaintiff had failed to pursue "the remedies available to it through the state courts." Covington Court, 77 F.3d at 178.
 
 
 [11]
 Of course, after discovery, should Plaintiffs' claims be revealed to be frivolous and without any factual basis, Defendants may then be entitled to a summary judgment in their favor.
 
 
 [12]
 Because a physical invasion is a "final decision," this takings claim is subject only to Williamson's exhaustion requirement. See Wisconsin Central Ltd. v. Public Service Comm'n, 95 F.3d 1359, 1368 (7th Cir. 1996). However, as discussed below, the Forseths' claim fails to satisfy even this requirement because they had, but did not utilize, state law remedies.
 
 
 [13]
 Federal courts, relying on Williamson, have dismissed the vast majority of takings claims brought in federal court, see generally John J. Delaney & Duane J. Desiderio, Who Will Clean Up the Ripeness Mess? A Call for Reform So Takings Plaintiffs Can Enter the Federal Courthouse, 31 Urb. Law. 195 (1999), while the Supreme Court has repeatedly reaffirmed Williamson. See, e.g., Suitum, 520 U.S. at 738; MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 349 (1986). In response, Congress has recently attempted to remove these procedural hurdles. See, e.g., Property Rights Implementation Act of 1998, S. 2271 (1998); Private Property Rights Implementation Act of 1997, H.R. 1534 (1997).
 
 
 [14]
 In light of our above holding that Plaintiffs failed to satisfy Williamson's ripeness requirements because of their failure to exhaust their state remedies, we need not address the issue of whether the Forseths' satisfied the "final decision" prong of Williamson. Nevertheless, for the sake of completeness, we would be inclined to conclude that the Forseths did in fact satisfy Williamson's final decision requirement by demonstrating "a final decision on a 'development plan submitted, considered, and rejected by the governmental entity,'" see Covington Court, 77 F.3d at 179 (quoting Unity Ventures, 841 F.2d at 775), by way of their Notice of Circumstances of Claim and an Itemized Claim served in early March 1996 upon Defendants. Pursuant to state law governing actions against a governmental subdivision and its officers, see Wis. Stat. sec. 893.80(1), because Defendants failed to respond after 120 days, the Forseths' claim was deemed disallowed. See id.
 Although we do not know why the Forseths did not pursue several other opportunities to receive a decision under Wisconsin law, such as seeking a variance from the Plan Commission or an approval of a plat that included the increased wetlands areas without the buffer strip conveyance to Tews, we presume that it was because the Forseths did not believe they could receive a favorable decision in light of their treatment by President Tews and Village Administrator Swartz. Consistent with Williamson's ruling that a plaintiff need not pursue state procedures that are unavailable or inadequate, see Williamson, 473 U.S. at 194-95, we are of the opinion that due to the questionable official conduct alleged by Plaintiffs that, if true, could taint their avenues for local administrative decisions, we would not require the Forseths to seek multiple final decisions only to be slain more than once.
 
 
 [15]
 As previously stated, the Forseths have filed state law claims both in this case and in a parallel state action filed after the district court dismissed their case in September 1998.