**Thomas BARON, Mary Lou Baron, and Pondview of Pardeeville, LLC, Plaintiffs,**

v.

**Katie FREDERICKSON and Village of Pardeeville, Defendants.**

No. 05–C–500–C.

United States District Court, W.D. Wisconsin.

March 14, 2006.

Mark B. Hazelbaker, Sun Prairie, WI, for Plaintiffs.

Amy J. Doyle, Crivello, Carlson & Mentkowski, Milwaukee, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiffs Thomas Baron, Mary Lou Baron and Pondview of Pardeeville, LLC contend that defendants Katie Frederickson and Village of Pardeeville violated plaintiffs' rights under state law and under the Fourteenth Amendment by interfering with their ability to complete a residential property development. Jurisdiction is present under 28 U.S.C. § 1331.

According to plaintiffs, before they began their land development project, defendant Frederickson and her family had access to a pond located on plaintiffs' property. Now, as a result of the development, defendant Frederickson has no access to the pond. Plaintiffs allege that defendant Frederickson has done all she can to delay the progress of their development project by failing to file necessary paperwork, falsifying the agenda for village board meetings and throwing up unnecessary and illegal obstacles to the approval of plaintiffs' building plans.

Now before the court is defendants' motion for summary judgment. Because plaintiffs have offered no evidence from which a jury could infer that defendants acted improperly or deprived plaintiffs of any of rights under federal law, defendants' motion will be granted with respect to plaintiffs' constitutional claims. Plaintiffs' state law claims are not developed sufficiently to permit me to rule upon them, so I will decline to exercise supplemental jurisdiction over them and will dismiss them without prejudice.

Before setting out the undisputed facts, I note that plaintiffs' responses to defendants' proposed findings of fact fail to conform in every respect to this court's summary judgment procedures, a copy of which was provided to the parties on September 8, 2005, as part of the preliminary pretrial conference order. Although plaintiffs attached copious unauthenticated documents to their responses to defendants' proposed findings of fact, they cited only one source in support of each of their responses: the five paragraph affidavit of plaintiff Thomas Baron, in which he avers inexplicably and without foundation that "all of the information contained in the

*Defendants'* Proposed Findings of Fact is true and correct" and that "attached to [his] affidavit are various documents which support the assertions made in the Findings." Aff. of Thomas Baron, dkt. # 19, at 1–2 (emphasis added). (In fact, there are no documents attached to plaintiff Thomas Baron's affidavit; I assume that the documents to which he refers are those attached to plaintiffs' responses to defendants' proposed findings of fact.) Because plaintiff Thomas Baron's affidavit is insufficient to support any of plaintiffs' responses to defendants' proposed findings of fact, I have disregarded plaintiffs' responses in their entirety. (In doing so, I note that plaintiffs' counsel has been admonished on at least one prior occasion for his failure to follow this court's summary judgment procedures in a case remarkably similar to this one. *Jordan v. Town of Paris,* Case No. 97–C–731–C.)

From defendants' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiffs Thomas and Mary Lou Baron own eleven acres of property located in the Village of Pardeeville along the Fox River and Park Lake. Plaintiffs purchased this property in 2000. Plaintiff Pondview of Pardeeville LLC is a limited liability company established by plaintiffs Thomas and Mary Lou Baron for the purpose of developing their Pondview property.

Defendant Katie Frederickson has been the clerk and administrator of the Village of Pardeeville since 2002. For the past 25 years, she has worked in government service as a clerk, treasurer and administrator for the Village of Pardeeville and other municipalities. Defendant Frederickson completed an accreditation process to become a certified Wisconsin municipal clerk. She is not an elected official or a member of the Village of Pardeeville municipal board and has never voted on any proposal relating to plaintiffs' development project.

### B. *Residential Development Project*

On August 13 and September 10, 2002, plaintiffs appeared at Village of Pardeeville plan commission hearings to discuss their plans for a proposed condominium development. At these hearings, plaintiffs provided the commission with documents including a site development plan, flood profiles of the Fox River, an elevation study of the pond, survey of the area, a drawing of the condo design and a dam failure analysis of the Park Lake dam. Commission members expressed concern regarding several aspects of the proposed development, including problems with subsoil quality, private ownership of water frontage, water and sewer service and condominium regulations.

At the end of the plan commission's September 10, 2002 hearing, plaintiffs and others were given copies of a proposed "condominium ordinance" and were informed that a public hearing on the proposed ordinance would be held September 17, 2002. At the public hearing, no one spoke in opposition to the new ordinance, which was passed by the village board.

Because plaintiffs' property was zoned for single family residences and plaintiffs wanted to build multi-family condominiums, plaintiffs filed an application for a rezoning permit on October 10, 2002. On November 19, 2002, a public hearing was held on plaintiffs' request for rezoning. Plaintiffs were present at the hearing and spoke in support of their proposal. Several residents opposed the rezoning and raised concerns about the proposed multi-family development, parking, environmental issues, flood zones, soil conditions and traffic. Following the hearing, the village

board denied plaintiffs' rezoning request. Although the village has a process for appealing zoning decisions, plaintiffs did not appeal the decision or file a writ of certiorari or writ of mandamus in state court regarding the denial of their zoning request.

On March 11, 2003, plaintiffs' engineer presented the village planning and zoning commission with a preliminary plat and proposed utility plans for a seventeen plot, single-family residential development. (The number of lots was later reduced to fifteen.) Throughout the spring, plaintiffs exchanged information with the village engineer, utility commission, plan commission and village board regarding this new development plan. Negotiations between plaintiffs and the village involved matters such as the size of each lot, the connections to be made between the private subdivision roads and the village roads, the placement of utilities and sewer lines, the need for public easements and other similar matters. The village agreed to waive the requirement for park fees and sidewalks in exchange for plaintiffs' donation of a walking trail and bridge across their property. In addition, the village agreed to allow plaintiffs to construct a private road of nonconforming standards, install private utilities in the road and build nonconforming driveways on their lots. The village insisted that plaintiffs loop their water main into the village water system and enter into a letter of credit to provide the village with a guaranteed source of funds in the event that plaintiffs failed to complete the walking path, footbridge and other negotiated construction.

On August 29, 2003, a copy of plaintiffs' preliminary plat was forwarded to the Wisconsin Department of Administration and Department of Transportation for approval. On September 9, 2003, the Wisconsin Department of Natural Resources conditionally approved plaintiffs' plans and sewer specifications and on September 15, 2003, the Wisconsin Department of Transportation conditionally approved the plat, on the condition that the final plat complied with specified administrative code provisions. On September 16, 2003, the village board approved the Baron Pondview preliminary plat, subject to the receipt of an approval letter from Vytas Salna, the village lawyer, and a letter of credit from the bank. On October 1, 2003, the Wisconsin Department of Administration approved plaintiffs' preliminary plat with certain exceptions. During this time, plaintiffs continued to meet and exchange information with village officials over matters such as sewage pipes, road construction and other matters.

On February 14, 2004, Jim Grothman, plaintiffs' surveyor, prepared the final plat for the Pondview Subdivision. A copy of the final plat was forwarded to the Wisconsin Department of Administration and Department of Transportation on or about March 5, 2005. On March 16, 2004, the village board approved the final plat.

On April 5, 2004, the Wisconsin Department of Administration recommended changes in the final plat for the Pondview Subdivision. One day later, the Wisconsin Department of Transportation gave its approval to the final plat. The Wisconsin Department of Administration approved a revised version of the final plat for the Pondview Subdivision on April 16, 2004. Later that same day, Salna told plaintiffs' lawyer that the state had approved the final plat for the Pondview Plan and that it should be picked up by plaintiff Mary Lou Baron and brought to the village for final approval.

On April 23, 2004 the Wisconsin Department of Natural Resources conditionally approved amended plans and specifications for Pondview Subdivision Sanitary Sewer.

This approval was subject to several conditions.

On June 30, 2004, the village reminded plaintiffs' lawyer that several matters, including an easement agreement, were still not completed. On July 15, 2004, Salna provided plaintiffs' lawyer with a copy of the legal description of the property and requested that a draft of the easement agreement be forwarded to him for review. On July 28, 2004, Salna informed plaintiffs' lawyer again that the easement agreement and land donation agreements needed to be completed. On September 28, 2004, plaintiffs' lawyer was reminded again that certain items remained unfinished, including the land donation agreement, easement agreement, completion of the bridge and walkway and other construction-related matters.

On September 30, 2004, the village's Finance and Personnel Committee met to discuss the development. The committee voted to recommend to the village board that an occupancy permit be given to plaintiffs for three houses they were constructing at the time. The committee recommended that future occupancy permits be issued on a per case basis. In addition, the committee recommended that plaintiffs' letter of credit be reduced and redrafted. Finally, the committee authorized Salna to draft a "Memorandum of Understanding" with plaintiffs. The memorandum was to include the following provisions:

1. Completion and execution of a Land Donation Agreement will be done by November 1, 2004 with a clarification of the specifications for the walking trail;

2. Completion and execution of an Easement Agreement will be done by November 1, 2004;

3. Requirement for "as built" plans will be satisfied by using D[epartment of] P[ublic] W[orks President David] Tracey's field notes;

4. By November 1, 2004, the book value of the infrastructure will be provided to Tracey by Tom Baron who will reference his construction bid amounts;

5. Bridge and walkway will be installed before July 1, 2005;

6. Date for the completion and connection of the extension of the private drive to Bayview Drive will be July 1, 2005.

On November 16, 2004, plaintiffs and their attorney spoke to the village board to explain why "the agreement" had not yet been prepared. On November 22, 2004, a special village board meeting was held at which Salna and plaintiffs' attorney negotiated and signed the land donation and easement agreement. After revisions to these agreements were made, a motion was passed to approve the documents and to authorize the village clerk and president to sign both agreements. A second motion was made to accept a letter of credit in the amount of $52,500. The land donation and easement agreements were recorded with the Register of Deeds on December 6, 2004.

On December 16, 2004, plaintiffs filed a state Notice of Claim against defendant Village of Pardeeville. On July 18, 2005, plaintiffs filed a complaint in this action in state court. The matter was removed to federal court on August 16, 2005.

In October 2005, the village was forced to draw upon plaintiffs' letter of credit. As of January 2006, the footbridge remains unfinished.

## OPINION

Although many of the details of this case remain unclear, this much is certain. Plaintiffs began efforts to develop their land in 2001. Today, the development remains unfinished. Somewhere along the

line plaintiffs concluded (perhaps too hastily) that bureaucracy alone could not explain the seemingly endless obstacles they were encountering and decided that the only possible explanation for the delay was that someone in the village of Pardeeville was out to get them. They assert that defendant Frederickson is that someone.

In their complaint, plaintiffs contend that defendants' actions deprived them of their procedural and substantive due process and equal protection rights under the Fourteenth Amendment and of their rights under state law. Now, in response to defendants' motion for summary judgment, plaintiffs have conceded that their procedural and substantive due process claims should be dismissed; however, they continue to assert that defendants violated their right to equal protection and their rights under state law.

### A. Equal Protection

#### 1. Ripeness

■ Defendants contend that plaintiffs' equal protection claim is not ripe for decision because plaintiffs have failed to exhaust their state court remedies. In *Williamson County Reg. Planning Commission v. Hamilton Bank*, 473 U.S. 172, 193–94, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the United States Supreme Court articulated a special ripeness doctrine for constitutional property rights claims. Under *Williamson*, federal courts may not adjudicate land use disputes until all regulatory agencies have had an opportunity to make a considered definitive decision, and until the property owners have exhausted available state remedies for compensation. *Id.*

Although courts have applied the *Williamson* doctrine to due process and other "takings" claims, the Court of Appeals for the Seventh Circuit has rejected attempts to extend the doctrine's reach to equal protection claims in which a plaintiff alleges "governmental action wholly impossible to relate to legitimate governmental objectives." *Forseth v. Village of Sussex*, 199 F.3d 363, 371 (7th Cir.2000) (citing *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). In *Forseth*, the plaintiffs brought suit against a village and the village president, alleging that the plaintiffs' equal protection rights had been violated by the village's decision to approval their final plat on the condition that they convey a portion of their property to the village president. *Id.* at 370. The court of appeals held that the plaintiffs' allegations stated an "equal protection claim independent from their takings claim" and therefore was "not subject to *Williamson's* ripeness requirements." *Id.* at 371.

■ In the land use context, a plaintiff states a freestanding equal protection claim when he alleges that a governmental agent has acted maliciously in a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Id.* Much like the plaintiffs in *Forseth*, plaintiffs allege in this case that defendants Frederickson and the village of Pardeeville delayed the approval of their plat because of defendant Frederickson's interest in retaining personal use of plaintiffs' property. Accordingly, plaintiffs' equal protection claim is distinguishable from their now-abandoned "takings" claims and is ripe for decision.

#### 2. Merits of plaintiffs' equal protection claim

■ "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within a state's jurisdiction against intentional and arbitrary discrimination." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Although equal protection claims are most

commonly brought by members of disfavored classes of citizens, courts have recognized that successful equal protection claims can be brought by a "class of one," when a plaintiff alleges that he "has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment." *Id.*

Summary judgment is the moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Schacht v. Wisconsin Dept. of Corrections,* 175 F.3d 497, 504 (7th Cir.1999). To defeat defendants' motion for summary judgment, plaintiffs must come forward with facts "sufficient to establish the existence of [each] element essential to the[ir] case" and on which they bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this case, plaintiffs have not proposed any facts showing that they were treated differently from others similarly situated to themselves. Although plaintiffs assert that they "are aware that other developments in the Village [of Pardeeville] seem to have gone through without a hitch," while their project met with repeated delays, plaintiffs have not identified these "other developments" or even attempted to show how those developments were similar to their own development project. Without differential treatment, there can be no "unequal protection." *See, e.g., Purze v. Village of Winthrop Harbor,* 286 F.3d 452, 455–56 (7th Cir.2002) (finding equal protection class of one plaintiffs not similarly situated where "the allegedly similarly-situated individuals ... requested different variances than the [plaintiffs] requested; submitted their plats [for a subdivision] during different time periods; and had their plat requests granted by different and previous Boards").

■ Summary judgment is not a discretionary remedy. *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir.1994), *aff'd,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). When a moving party shows that the opposing party lacks evidence to support each element of a claim, summary judgment must be granted in favor of the movant. *Id.* Because plaintiffs have offered no evidence to show that they were treated differently from other similarly situated developers, defendants' motion will be granted with respect to plaintiffs' equal protection claim.

### B. *State Claims*

■ A district court may decline to exercise supplemental jurisdiction over a claim when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The general rule is that when all federal claims are dismissed prior to trial, the district court should decline to exercise supplemental jurisdiction over remaining state law claims. *Carr v. CIGNA Securities, Inc.,* 95 F.3d 544, 546 (7th Cir.1996). Because I am granting defendants' motion for summary judgment with respect to each of plaintiffs' federal claims, no claims remain within this court's original jurisdiction.

I will decline to exercise supplemental jurisdiction over plaintiffs' state law claims for several reasons. First, although both parties make reference to plaintiffs' "state law claims," it is not entirely clear which state laws plaintiffs believe have been violated or how those laws have been violated. From plaintiffs' complaint and from stray comments contained in the parties' responses and replies to defendants' proposed findings of fact, it appears that there are questions whether plaintiffs were given notice of their rights to appeal various village board decisions and whether defendants breached duties imposed upon them

by state law. However, none of these claims have been developed legally or factually. Even if I were able to identify plaintiffs' state law claims with any degree of confidence, I would be unable to resolve them in a satisfactory manner because plaintiffs have failed to propose any facts to support their claims.

 When a court declines to exercise supplemental jurisdiction over state law claims in a case that has been removed from state court, the court has two options: the claims may either be dismissed without prejudice or the case may be remanded under 28 U.S.C. § 1447(c) to the state court from which it was removed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Teta v. Packard,* 959 F.Supp. 469, 477 (N.D.Ill.1997). Although remand is generally preferred over dismissal, in this case plaintiffs' state law claims are so vague and undeveloped that it is not clear whether there is anything left to remand. Therefore, I will dismiss any state law claims that may remain in this case without prejudice to plaintiffs' refiling them in state court.

## ORDER

IT IS ORDERED that the motion for summary judgment of defendants Katie Frederickson and Village of Pardeeville is GRANTED with respect to plaintiffs' claim that defendants violated plaintiffs' rights to equal protection and due process under the Fourteenth Amendment.

FURTHER, IT IS ORDERED that plaintiffs' state law claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3).